[Civ. No. 10729.   Third Dist.   Mar. 10, 1964.]

LORAY PERINI, Plaintiff and Appellant, v. CLIFFORD C. PERINI, Defendant and Respondent.

A. M. Mull, Jr., and Cecil J. Bishop for Plaintiff and Appellant.

John A. Young for Defendant and Respondent.

PIERCE, P. J.—The wife in this divorce action appeals from an order denying her motion to vacate a default judgment in favor of the husband on his cross-complaint. This judgment granted the husband a divorce, awarded him child custody and also most of the community property. It also denied the wife a divorce on her complaint. We hold that all portions of the judgment are void and must be vacated. Following are the facts:

On December 20, 1961, the wife filed her divorce complaint after a 12-year marriage. She alleged in general terms her husband's extreme cruelty, she sought custody of two children, asked money for their support and alimony for herself. She also alleged the existence of community property which she prayed should be awarded to her.

After the filing of the complaint, both parties sought temporary child custody. Contested proceedings in this respect terminated when the parties stipulated that the wife have temporary custody of the children pendente lite and, on January 25, 1962, the court made its order pursuant to this stipulation. Shortly after this order was made, however, the wife voluntarily surrendered the custody of the children to the husband and left for Arizona. Her explanation of this will be stated below.

On February 27, 1962, the husband filed his answer to this complaint. Denials in the answer joined issue on the wife's right to a divorce, her fitness to have child custody, her right to alimony or to share the community property.

With this answer the husband filed a cross-complaint. He alleged cruelty on the part of the wife (also in general terms), abandonment of the children by the wife and *his* fitness to have them in his custody. He prayed that the community property be awarded to him. These pleadings were

served upon plaintiff's attorney. No answer to the husband's cross-complaint was ever filed.

On March 27, 1962, an interlocutory decree of divorce was entered. It recited that the cross-complaint had not been answered and that a default thereon had been entered, that evidence had been heard. The court found that all of the allegations of the cross-complaint were true. The husband was awarded an interlocutory decree of divorce on the ground of cruelty. He was also awarded custody of the children.

The decree awarded to the husband the home, household furnishings, bank account, a pickup automobile and "all other community property belonging to the parties hereto" excepting the wife's personal effects, a 1952 model automobile and "any balance of travelers checks in the possession of" the wife. The decree also contained the following: "It is further ordered, adjudged and decreed that the application of plaintiff LORAY PERINI for divorce be, and the same is, hereby denied. It is further ordered, adjudged and decreed that the plaintiff's, LORAY PERINI, application for support, temporary or permanent, be and the same is, hereby denied, and that the application of plaintiff, LORAY PERINI, for counsel fees and court costs be, and the same is hereby denied."

No notice of trial was ever served either upon the wife or upon her attorneys of record. Neither she nor her counsel was present in court when the hearing on the cross-complaint was had.

On July 25, 1962, the wife moved for an order vacating this judgment. The absence of notice of trial was brought to the attention of the court, but the motion purported to be under Code of Civil Procedure, section 473 (relief from mistake, inadvertence, surprise or excusable neglect).

On December 14, 1962, the court denied the wife's motion.

Intermediate the filing of the wife's complaint and the husband's answer and cross-complaint, and as a part of the proceedings for temporary child custody, the court had requested and obtained reports from the probation officer. One of these reports expanded on the wife's fitness as a mother. It included the statement "she had the reputation of being a very good mother, spending her entire time for the care of the children."

The hearing was entirely upon affidavits (which are included in the record before us). The wife's excuse for her departure, leaving the children with the husband, was that

she had become distraught and brought to the point of a nervous breakdown by her husband's conduct which she characterized as a deliberate effort to prejudice neighbors and friends by untrue imputations against her character and mental condition. She averred that she had been in fear that her husband would try to have her committed to a mental institution and that the children would then be sent to be raised in a foster home. She had felt that to avoid this it would be better for her to surrender the children to the husband and depart. It appeared she had become stranded in Arizona without funds to return.

The husband's affidavit denied the wife's charges.

It also was alleged in the wife's affidavit that a brother and sister with whom she had lost contact approximately 30 years before had been recently rediscovered living in Davis. The wife had made frequent visits to the home of the brother, his wife and children and it is clear from the affidavits of both parties that the husband had become jealous of the attentions paid by the wife to her brother. He described their relationship as an unnatural one. This the wife vigorously denied.

The husband's affidavit, in addition to denying any harassment, also averred that the wife, on February 18, 1962, had phoned him from Tucson, Arizona, and during the conversation had informed him she did not want a divorce but would not contest his, nor would she contest the husband's right to child custody; also that she didn't want any part of the property. (This was nine days before the husband had filed his cross-complaint.) The wife's affidavit admitted a telephone conversation but denied the husband's statement of its terms. The husband also attached a copy of a letter dated March 15, 1962, which he had received from the wife. In this letter is a paragraph which the husband argues constitutes a waiver. This portion states: ''I have a letter from my attorney saying that soon you will be entitled to a default judgment against me on your cross complaint which, of course, I've known for some time. If this will insure the safety of the child so that they won't ever be put in a foster home, then nothing else matters. What would I want with 'My share' of the property—we bought it and built the house for them (the children) and I wouldn't touch it in a million years—you know that.''

Read in context, however, the letter seems more a plaintive appeal than a waiver, an appeal either for a reconciliation or for a restitution of her contacts with her children, or both.

She asks, "When may I come to see the children?" and after a bitter comment on the husband's treatment of her she adds, "but the fact still remains that the children are safely with you and *not* in a foster home." She reminds him that he had assured her "to take a month" that the "door would always be open." She states: "You and the children were my whole life," and she expresses puzzlement over "why or how the finding of my brothers and sisters again has turned everything into the tragedy it has." She mentions her inability to work and thus earn money to return but states that a check for past earnings was expected soon and the letter ends: "Please kiss the children for me and give them my love—and tell them if you can I will be home soon. Bless you all."

Also relied upon by the husband is a letter dated March 16, 1962, by the wife's attorney to the husband's attorney. It read (in full): "I have finally received explicit instructions from my client that I am not to proceed in this matter, so I inform you that you are free to proceed as the law allows. Needless to say, I am completely irritated, but . . . ."

The attorney was not called, gave no affidavit and there is no explanation of this somewhat cryptic letter, including the meaning of the phrase "as the law allows." There was no showing made that the wife had authorized a dismissal of her complaint nor that her instructions to the lawyer not to proceed had been given with a full understanding of the extent of her rights, or the effect thereon of her nonappearance in court.

Since the wife's motion for an order to vacate the default judgment was heard solely upon affidavits, we have all of the evidence before us which the trial court had. Appellant urges its order constituted an abuse of discretion. On this appeal, however, we do not need to base our conclusion upon an answer to the question of whether a denial of the motion was an abuse of discretion,[1] because the fact that the court acted

---

[1] If this were a matter where the only attack upon the judgment could be for an abuse of discretion, the following rules would be applicable: "In an action for divorce, upon very slight showing the court will set aside a default." (*Rehfuss* v. *Rehfuss,* 169 Cal. 86, 92 [145 P. 1020].) "A harsh default judgment under which there is a grossly disproportionate division of the community property, inadequate support payments, and minor children taken away from a parent, should be vacated without hesitation in order to allow the case to be heard and determined on its merits." (*Necessary* v. *Necessary,* 207 Cal.App.2d 780, 784 [24 Cal.Rptr. 713].)

in excess of jurisdiction appears without conflict and on the face of the record.

When the husband filed his cross-complaint in the action, the following issues had already been framed by the wife's complaint and the husband's answer: (1) the wife's right to a divorce upon the ground of cruelty, (2) whether she or the husband should have child custody, (3) her right to alimony, (4) her right to an award for child support if custody was granted to her and (5) distribution of the community property. The reassertion in the cross-complaint of issues (2), (3), (4) and (5) required no responsive pleading from the wife and no default could properly be taken for her failure to answer such allegations. (*Crofton* v. *Young*, 48 Cal.App.2d 452, 457 [119 P.2d 1003]; 2 Chadbourn, Grossman and Van Alstyne, Cal. Pleading, p. 659.) The husband, of course, by pleading his own right to a divorce, had raised a new issue, requiring answer. For the failure of the wife to plead responsively to the allegation of her cruelty she was in default *but only as to that issue*. This default did not constitute, ipso facto, a waiver of the wife's right to a trial on the issues already joined.

Both the husband and the wife may be granted a divorce, each against the other, in which event there must be an equal distribution of the community property, and the wife may, or may not, be entitled to alimony depending upon the facts. (*De Burgh* v. *De Burgh*, 39 Cal.2d 858, 874 [250 P.2d 598].)

Here, as we have shown, the wife's default to the husband's cross-complaint constituted only an admission that she had been guilty of extreme cruelty to the husband, entitling him to a divorce against her. This did not constitute an abandonment of her complaint charging that he had been guilty of extreme cruelty to her, entitling her to a divorce. She was entitled to a trial on that issue; also upon the other issues framed by the complaint and answer as stated above.

Before trial could be had on those issues she was entitled, under Code of Civil Procedure section 594, subdivision 1, to a notice of trial. Service of this notice and proof of service are mandatory. (*Payer* v. *Mercury Boat Co.*, 195 Cal. App.2d 659 [16 Cal.Rptr. 123].) A judgment made after a trial held without such notice is not merely error; the court acts in excess of jurisdiction. It is elementary that due process of law requires that the party against whom a claim is asserted shall have opportunity to be present when

the evidence to sustain the claim is introduced, and that a judgment cannot be rendered in a "trial" held without notice. (Rest., Judgments, § 6, com. f; *Griffin* v. *Griffin*, 327 U.S. 220 [66 S.Ct. 556, 90 L.Ed. 635]; 1 Witkin, Cal. Procedure, Jurisdiction, § 58, p. 328; *id.*, § 102, p. 368.) ██ In divorce actions the requirements of notice and opportunity for a hearing are those applicable to proceedings in rem. (*Id.*, § 108, p. 374.)

The contention that the acts of the wife here constituted a waiver of her right to a hearing and to notice of trial cannot be sustained. ██ The primary essentials of a waiver of a right are a clear expression made with a full knowledge of the facts and an intent to waive the right. (*Henderson* v. *Drake*, 42 Cal.2d 1, 5 [264 P.2d 921]: *Record* v. *Indemnity Ins. Co.*, 103 Cal.App.2d 434, 445 [229 P.2d 851]; *Cohen* v. *Metropolitan Life Ins. Co.*, 32 Cal.App.2d 337, 348 [89 P.2d 732]; *Hacker etc. Co.* v. *Chapman Valve Mfg. Co.*, 17 Cal. App.2d 265, 274 [61 P.2d 944].) ██ Doubtful cases will be decided against the one who claims a waiver. (*Roberson* v. *Industrial Acc. Com.*, 146 Cal.App.2d 627, 629 [304 P.2d 202].)

██ The statements and acts of the wife as set forth above are insufficient to constitute a waiver by the wife of her right to have the issues raised by her complaint tried, nor do they constitute a waiver of notice of such trial. Her letter did express a knowledge (through her attorney) that her husband would be entitled to obtain a default judgment on his cross-complaint, but there was no evidence that she was informed that in this judgment an attempt would be made to adjudicate the issues raised by her own pending complaint. The letter implies knowledge that the husband would obtain a divorce and that the children, placed in his custody, would not "ever be put in a foster home." There is nothing to indicate her awareness that both husband and wife can be awarded divorces, and that a wife can be awarded alimony notwithstanding the granting of dual divorces, and that in such case an equal distribution of community property is mandatory, and there is no showing that she intended to waive those rights. ██ The burden is upon the party claiming a waiver to prove it. (*In re Bishop*, 201 Cal.App.2d 604, 609 [20 Cal.Rptr. 186]; *Brewer* v. *Municipal Court*, 193 Cal.App.2d 510, 515 [14 Cal.Rptr. 391.] This burden the husband did not sustain.

██ Since the evidence was insufficient to establish a

waiver, the judgment attacked was in excess of the court's jurisdiction, and to that extent void. (*Burtnett* v. *King*, 33 Cal.2d 805, 807 [205 P.2d 657, 12 A.L.R.2d 333].) The wife was not accorded due process and the portions of the judgment which purport to adjudicate the wife's right to a divorce, and to child custody, to alimony, and to child support if custody be granted to her, and to at least an equal share in the community property cannot withstand attack.

▮ Was the attack by the wife's motion proper and timely? The judgment shows on its face that it was based wholly upon the default taken. The invalidity, therefore, appears not only on the face of the record, but on the judgment itself and is subject to collateral attack at any time. (*Craft* v. *Craft*, 49 Cal.2d 189 [316 P.2d 345]; 3 Witkin, Cal. Procedure, Attack on Judgment in Trial Court, § 65, p. 2117, and cases cited.) Even had the judgment's invalidity not appeared on its face, it was subject to attack on this motion made within a reasonable time. (*Id.*, p. 2117.)

Does the invalidity of portions of the judgment require that the whole be vacated? ▮ "If the judgment is only partially void, and the void part is severable, that part alone may be collaterally attacked and the balance will remain effective. [Citations.] ▮ But if the judgment is not severable the whole may be attacked despite its partial validity. [Citation.]" (3 Witkin, Cal. Procedure, Attack on Judgment in Trial Court, § 6, p. 2050.)

It has been held that that portion of a decree which grants the divorce is severable from the rest of the decree. (*Gudelj* v. *Gudelj*, 41 Cal.2d 202 [259 P.2d 656].) The opinion in that case (at p. 214), quoting from *American Enterprise, Inc.* v. *Van Winkle*, 39 Cal.2d 210, 217 [246 P.2d 935], says: " '[T]he test of whether a portion of a judgment appealed from is so interwoven with its other provisions as to preclude an independent examination of the part challenged by the appellant is whether the matters or issues embraced are the same as, or interdependent upon, the matters or issues which have not been attacked.' "

▮ We have concluded that the award of a divorce to the husband cannot be severed from the rest of the issues to be tried, one of which, as we have seen, is the question of the right of the wife to a divorce from the husband. It is one thing to hold, where only one party seeks (or can be awarded) a divorce, that such issue is not so inextricably interwoven with the other triable issues as to be inseverable. It is quite another thing to hold, where both parties are, or may

be, entitled to a divorce that the issue as to the rights (or guilt) of one can be tried separately from the rights (or guilt) of the other. To try to do so is to attempt a feat having the sophistical overtones of a Solomon-like child-cleavage. Where each spouse claims extreme cruelty by the other we doubt if justice could be accomplished even if the sole issue to be decided was the marriage dissolution. We are certain the interests of justice would be disserved by such separation when interwoven therewith are the issues of distribution of the community property, support of the wife and children, and child custody.

And moreover, even were we to hold trial of the husband's right to a divorce to be severable generally, we would still face the problem of having to find that under the circumstances of this case, outlined above, there had been no abuse of the trial court's discretion in its refusal to set aside the wife's default, a finding which we seriously doubt could be made under the authorities cited in footnote 1, *supra*.

The order appealed from is reversed and the court is instructed to vacate the judgment and allow the wife to file her answer to the husband's cross-complaint, the cause thereafter to be tried on the issues raised by all the pleadings.

Schottky, J., and Friedman, J., concurred.

A petition for a rehearing was denied April 7, 1964, and respondent's petition for a hearing by the Supreme Court was denied May 6, 1964.