[No. G026035. Fourth Dist., Div. Three. June 26, 2002.]

AHMAD HEIDARY et al., Cross-complainants and Respondents, v.
FARZAD YADOLLAHI et al., Cross-defendants and Appellants.

Counsel

Law Office of Morris Stone and Morris Stone for Cross-defendants and Appellants.

Law Offices of Charles W. Tourdot and Charles W. Tourdot for Cross-complainants and Respondents.

Opinion

**BEDSWORTH, J.**—Farzad Yadollahi and Fariborz Biyazaei appeal from the denial of their motion to set aside a $943,000 default judgment entered against them jointly on a cross-complaint. Appellants contend the judgment is void because their default was improperly based upon their failure to appear at a trial for which they were given no notice. They also point out that the judgment subsequently entered on the default is rather shockingly out of sync with the distinct damages alleged against each of them in the operative complaint. We agree.

Even assuming appellants had been given proper notice of the trial (which they were not) the court had no authority to enter their defaults for failure to appear. The court's options at that point were to allow cross-complainants to proceed with their case in appellants' absence, or to continue the trial. Its order purporting to enter the default was void, and could be collaterally attacked at any time. Additionally, the only damages alleged with specificity in the cross-complaint were approximately $322,000 (plus accrued interest on a portion) against Yadollahi, and approximately $36,000 (plus accrued interest) against Biyazaei. None of those damages were alleged to be owed jointly and severally by appellants. Consequently, the court's entry of a

single $943,000 judgment, against both appellants jointly, borders on the unfathomable. The order denying the motion to vacate is reversed.

The operative complaint in this case is a cross-complaint. It asserts, in general, that the cross-complainants, Ahmad and Peyman Heidary, entered into agreements with appellants and a third cross-defendant, Majid Tabibi, concerning the ownership and operation of two gas stations. It alleges, in 18 causes of action, that each of the cross-defendants participated in varying degrees in breaching agreements—including promissory notes—and in converting the Heidarys' share of the profits from the businesses, failing to make payments in compliance with promissory notes, and defrauding the Heidarys into investing their money in the businesses. The complaint prays for both compensatory and punitive damages, although it specifies the amount of compensatory damages sought in only a few causes of action, and never specifies any amount of punitive damages.

In April of 1997, appellants' attorney received permission from the court to withdraw as their counsel. The withdrawal order included the last known addresses for each appellant. Several months later, in September of 1997, plaintiff's counsel served a notice of continuance of the trial date to January 20, 1998. Unfortunately, however, that notice included neither appellants nor their former counsel.[1]

Not surprisingly, neither appellant appeared for the trial on January 20, 1998. The trial court (apparently without checking to see if appellants had been given notice) ordered that their answers to the cross-complaint be stricken and their defaults entered "for their failure to appear at trial this date." The court then continued the trial date again.

The day after the court ordered the defaults, the Heidarys filed a request for entry of default with the clerk. The request reflects it was served upon appellants by mail on that same date, at the addresses included in the order relieving their counsel. The default was entered by the clerk the same day the request was filed and mailed to appellants.

Approximately a month later, the Heidarys filed an ex parte application for entry of judgment based upon the defaults. Although our record does not include all the documents filed in support of the judgment, it does include a "statement of damages" sought. That statement makes no distinction

---

[1] We do not mean to suggest that service on appellants' former counsel would have been adequate, but his inclusion on the service list would suggest a simple failure to update. Here, however, it appears that while the list was updated to remove counsel, no one recognized that his deletion necessitated the inclusion of new addresses for appellants. That should not happen.

between the varied claims asserted against each appellant, and simply requests $182,952.37 for "General Damages consisting of Principal and Interest due on Promissory Notes"; $260,000 for "General Damages—Loss of Real Estate"; and $500,000 for "Special Damages—Punitive." The total damages sought in the statement comes to $942,952.37. The Heidarys did not serve appellants with any of the documents supporting the entry of judgment, but it would have made scant difference if they had—the judgment was entered the same day those documents were filed, and in the exact total amount requested in the statement of damages.[2]

It is not clear when appellants first became aware of the judgment entered against them, but the record suggests it may have been when the Heidarys recorded an abstract of judgment and a lien in July of 1999. Less than a month later, appellants re-retained their previous lawyer and filed a motion to vacate the judgment. They argued the judgment was void because they had never received notice of the trial, and thus the court had no power to enter their defaults. They also argued that the damages awarded in the judgment were in excess of the damages specified in the complaint.

The Heidarys opposed the motion, insisting appellants had received sufficient notice of the default entered against them, because they were each mailed a copy of the request for default the day after the court had ordered it entered. According to the Heidarys, appellants had six months from that date to seek relief from the default under Code of Civil Procedure section 473, and their failure to do so precluded relief. The Heidarys also contended that if all the numbers mentioned in their cross-complaint were added up, it amounted to approximately $458,000 against Yadollahi, and approximately $131,000 against Biyazaei.

The court denied the motion to vacate, stating "[t]he amounts of the judgments are supported by the cross-complaint. They're within the amounts enumerated and cited in the cross-complaint, and therefore, I think the notice requirement is there as to the amount of damages sought against them."

Appellants subsequently filed a petition for writ relief with this court, but we denied it on the basis that they had an adequate remedy at law. This appeal is that remedy.

---

[2] The Heidarys' counsel filed only a conclusory declaration stating that appellants were not served with the documents supporting the application for judgment because their "whereabouts are unknown to us." He does not explain what efforts were made to locate them or why the last known addresses were not used.

## I

As appellants correctly contend, this case is not governed by Code of Civil Procedure section 473, subdivision (b),[3] which allows parties to seek relief from certain consequences of their own "mistake, inadvertence, surprise, or excusable neglect." Indeed, this case went awry not because of appellants' mistake, but because of *everyone else's*: It was plaintiff who neglected to inform appellants of the trial date; it was the court which improperly ordered their default for failing to appear (apparently without confirming they were notified); it was the Heidarys who sought a type and amount of damages not specified in their cross-complaint; and it was again the court which granted that request. None of those acts were attributable to anything done by appellants. Consequently, their ability to seek relief is not constrained by the six-month time limitation contained in section 473, subdivision (b).

Instead, appellants are seeking relief from a void judgment, which the court has authority to set aside at any time. (*Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1239 [79 Cal.Rptr.2d 719] ["A judgment void on its face . . . is subject to collateral attack at any time."]; *Plotitsa v. Superior Court* (1983) 140 Cal.App.3d 755, 761 [189 Cal.Rptr. 769] ["a default that is void on the face of the record when entered is subject to challenge at any time irrespective of lack of diligence in seeking to set it aside within the six-month period of section 473"].) Indeed, section 473 itself contains a separate provision allowing the court to set aside a void judgment without any mention of a time limit. (§ 473, subd. (d) ["The court may, . . . on motion of either party after notice to the other party, set aside any void judgment or order."].)

And in this case, the record does show the default order, and hence the judgment, was void on its face. Simply stated, the court had no power to order the entry of appellants' default when they failed to appear for trial. (*Wilson v. Goldman* (1969) 274 Cal.App.2d 573 [79 Cal.Rptr. 309]; *Kahn v. Kahn* (1977) 68 Cal.App.3d 372, 382, fn. 5 [137 Cal.Rptr. 332]; *In re Brian W.* (1996) 48 Cal.App.4th 429, 433, fn. 3 [56 Cal.Rptr.2d 1]; *In re Nemis M.* (1996) 50 Cal.App.4th 1344, 1353 [58 Cal.Rptr.2d 324]; see also *Merrifield v. Edmonds* (1983) 146 Cal.App.3d 336, 341 [194 Cal.Rptr. 104] [explaining the distinction between a default judgment and the "uncontested" trial which occurred in that case].)

In *Wilson*, the facts are nearly identical to this case. The only distinguishing factor is that the defendant in that case *did* receive proper notice of the

---

[3] All further statutory references are to the Code of Civil Procedure.

trial. When he did not appear, the court entered a default at the request of the plaintiffs. The plaintiffs then chose to wait until another day to prove up their damages, so no trial was held. The plaintiffs subsequently proved damages on an ex parte basis, without notice to the defendant.

The *Wilson* court affirmed the order vacating the judgment, and because its opinion explains the governing law quite clearly, we will quote it at some length: "Section 585 of the Code of Civil Procedure does not authorize the entry of any default in cases where an answer is on file, *whether the defendant does or does not appear at the time the action is called for hearing.*[4] (*Warden* v. *Lamb*, 98 Cal.App. 738, 741 [277 P. 867]; Code Civ. Proc., § 585; *Barbaria* v. *Independent Elevator Co.*, 133 Cal.App.2d 657, 659 [285 P.2d 91].) Where the defendant who has answered fails to appear for trial 'the plaintiff's sole remedy is to move the court to proceed with the trial and introduce whatever testimony there may be to sustain the plaintiff's cause of action.' (*Warden* v. *Lamb, supra,* p. 741.) In such case a plaintiff is entitled to proceed under the provisions of Code of Civil Procedure, section 594, subdivision 1, and he may do so in the absence of the defendant provided the defendant has been given at least five days notice of the trial.[5] Section 594 does not authorize the entry of the default in the event the defendant fails to appear, and a hearing held pursuant to that section under such circumstances is uncontested as distinguished from a default hearing. (See *Ahmanson Bank & Trust Co.* v. *Tepper,* 269 Cal.App.2d 333, 340 [74 Cal.Rptr. 774]; Code Civ. Proc., §§ 485, 494; *Warden* v. *Lamb, supra,* 98 Cal.App. 738, 741.) [¶] Where a defendant has filed an answer, neither the clerk nor the court has the power to enter a default based upon the defendant's failure to appear at trial, and a default entered after the answer has been filed is void (*Warden* v. *Lamb, supra,* p. 741; *Barbaria* v. *Independent Elevator Co., supra,* 133 Cal.App.2d 657, 659; *Miller* v. *Cortese,* 110 Cal.App.2d 101, 104-105 [242 P.2d 84]), and is subject to expungment at any time either by motion made pursuant to Code of Civil Procedure, section 473 or by virtue of the court's inherent power to vacate a judgment or order void on its face. (*Potts* v. *Whitson,* 52 Cal.App.2d 199 [125 P.2d 947]; *Reher* v. *Reed,* 166 Cal. 525, 528 [137 P. 263]; *Baird* v. *Smith,* 216 Cal. 408,

[4]Section 585 is the general statutory authority for default judgments. It provides that "[j]udgment may be had, if the defendant fails to answer the complaint, as follows: . . . ." It then goes on to specify the procedures for obtaining a default in cases where the defendant failed to file an answer or other appropriate response within the time specified in the summons.

[5]Section 594 provides in pertinent part that "either party may bring an issue to trial or to a hearing, and, in the absence of the adverse party, unless the court, for good cause, otherwise directs, may proceed with the case and take a dismissal of the action, or a verdict, or a judgment, as the case may require; provided, however, if the issue to be tried is an issue of fact, proof shall first be made to the satisfaction of the court that the adverse party has had 15 days' notice of such trial or five days' notice of the trial in an unlawful detainer action . . . ."

409-411 [14 P.2d 749].) Here the plaintiffs did not proceed to trial on the date set and for which notice of trial had been served. Instead they obtained an entry of defendant's default beyond the power and authority of the court to grant. Such a void 'entry of default' cannot excuse compliance with Code of Civil Procedure, section 594, subdivision 1. Defendant's answer placed in issue factual questions concerning liability and damages. When the trial of those matters actually took place at plaintiffs' instance on October 16, 1967, some five months after the trial date, defendant was not in default and was entitled to notice of the hearing as provided in the code section. No such notice was given. A judgment made after a trial held without the notice prescribed by Code of Civil Procedure, section 594, subdivision 1 is not merely error; it is an act in excess of the court's jurisdiction. (*Perini* v. *Perini*, 225 Cal.App.2d 399 [37 Cal.Rptr. 354].)" (*Wilson v. Goldman, supra,* 274 Cal.App.2d 573, 576-577.)

█ Since *Wilson,* the Legislature has expanded the law pertaining to default, which now specifically allows an answer to be stricken and a default entered as a sanction for the defendant's extreme misuse of the discovery process. (§ 2023, subd. (b)(4); see, e.g., *Greenup v. Rodman* (1986) 42 Cal.3d 822 [231 Cal.Rptr. 220, 726 P.2d 1295].) However, that provision has no application to the situation where defendant simply fails to appear at trial. Moreover, even if the default here could otherwise be properly characterized as a "sanction," analogous to the discovery sanctions, it could not be sustained. Section 2023 specifically requires notice to the affected party and an opportunity to be heard *before* imposition of any sanction. (§ 2023, subds. (b) & (c).)

█ In this case, just as in *Wilson,* the court had no power to enter appellants' defaults when they failed to appear at the trial. Of course, the court's error here was compounded by the fact appellants were never given notice of the trial, but that fact is irrelevant in establishing their right to relief. Even assuming appellants had received proper notice, the court's only options when they did not appear were to proceed with the trial in their absence, or to continue the trial. Just as in *Wilson,* the court here chose to continue, allowing the Heidarys to put on their proof of damages at a later date. And like the defendant in *Wilson,* appellants here were entitled to notice of what amounted to a continued trial date. Because they did not receive any, the judgment entered against them is void.

## II

█ A default judgment is also void when the damages awarded are in excess of what is specified in the complaint. (§ 580; *In re Marriage of Lippel*

(1990) 51 Cal.3d 1160,1167 [276 Cal.Rptr. 290, 801 P.2d 1041, 5 A.L.R.5th 1156] ["[S]ection 580 is to be interpreted, in accordance with its plain language, to deprive a trial court of jurisdiction to enter a judgment against a defaulting defendant which awards greater relief than that sought in the plaintiff's complaint."].)

In this case, the damages awarded clearly exceeded what was pled, both because the amount was higher and because each appellant was held jointly liable for the damages alleged against the other. The cross-complaint contains 18 causes of action. The first through third and the sixth through eighth causes of action allege breaches of contract and fiduciary duty and conversion, but do not specify any amount of damages. Instead, they recite that damages will be proven at trial.

The fourth cause of action is for accounting, and the fifth cause of action is for appointment of a receiver. In neither one are any damages alleged. The ninth and 12th causes of action are solely against Tabibi.

The 10th cause of action is for "judicial foreclosure of security agreement" against Yadollahi. It alleges that Yadollahi owes $72,142.88, plus interest at a rate of 12¾ percent per annum from August of 1992. The 11th cause of action is against Biyazaei only, for breach of promissory note. It alleges Biyazaei owes $36,071.49, plus interest at a rate of 12¾ percent per annum from August of 1992. The 13th cause of action is against Yadollahi for breach of the same promissory note alleged in the 10th cause of action. The damages are duplicative of the amount stated in that cause of action.

The 14th cause of action is against all cross-defendants for indemnification in the event the Heidarys are found liable on the complaint. It specifies no damage amount. The 15th cause of action seeks declaratory relief only. The 16th cause of action, for "uttering false and fraudulent documents," states that damages are "currently unknown." The 17th cause of action is for dissolution of partnership, with no damages specified. The 18th cause of action is for fraud and deceit against Yadollahi and Majid, *but not Biyazaei.* The damages are alleged to be "not less" than $250,000.

In summary then, Yadollahi and Biyazaei are each alleged to be liable on his own promissory note, and Yadollahi is alleged to be liable for an additional $250,000 for fraud. None of those damages are allegedly owed jointly by the appellants.

The Heidarys contend the specific damages pled against each appellant are significantly higher than the numbers we have used. They point out that

damage allegations in the body of the complaint can be relied upon to cure any defect in the specific prayer. (*National Diversified Services, Inc. v. Bernstein* (1985) 168 Cal.App.3d 410, 418 [214 Cal.Rptr. 113].) And using essentially every number they can locate in the complaint except the date, the Heidarys assert that the total damages specifically alleged against Yadollahi are approximately $458,000 and the total damages specifically alleged against Biyazaei are approximately $131,000.

Ignoring, for the moment, the fact that even the Heidarys' numbers do not add up to the judgment entered in this case, we cannot accept their totals as a valid specification of damages. Most importantly, the Heidarys fail to distinguish between allegations of damages, and *allegations of fact which include numbers.* For example, the Heidarys include the following "general allegation"[6] in their computation of damages: "Unknown to cross-complainants, Defendant [Yadollahi] . . . transferred TWENTY THOUSAND DOLLARS ($20,000.00) on the Line of Credit to the ARCO account, and . . . [Yadollahi] transferred SEVENTY-THOUSAND DOLLARS ($70.000.00) out of the Line of Credit established . . . for EXXON and deposited same into EXXON's account." That allegation states only that Yadollahi transferred funds between accounts maintained for the benefit of the parties' jointly owned businesses. In and of itself, the allegation demonstrates no damages. Of course, if the allegation was that Yadollahi had transferred money from the business account to buy himself a Ferrari, that might be a different story. But it is not.

Similarly, the Heidarys rely upon another "general allegation" that they "paid to ARCO a) a personal check in the amount of TEN THOUSAND DOLLARS ($10,000.00) and b) all parties released the $20,000.00 Certificate of Deposit to the State Board of Equalization." Again, that allegation does not amount to an assertion of damages. To the contrary, it merely recites payments made for the benefit of the jointly owned business.

In fact, these "general allegations" are clearly not intended to operate as distinct damage claims. The facts relating to the transfers of funds are specifically re-alleged within the cause of action for fraud against Yadollahi, along with additional allegations stating that the Heidarys were fraudulently induced into funding the accounts from which the transfers were made, by promises that the funds were to be used in specific ways. Thus, it is clear that those alleged transactions form the nucleus of the fraud cause of action. As such, they are subsumed within the fraud cause of action's general prayer for damages of "not less" than $250,000.

---

[6]The Heidarys' "general allegations" are facts of presumably general application, alleged before setting forth the particular causes of action, but then incorporated by reference into them.

Additionally, the Heidarys have improperly used the numbers in the cross-complaint duplicatively. For example, the "general allegations" concerning the money transfers are separately included in the Heidarys' damage totals for *each* of the appellants. And the Heidarys have done so despite the fact that Biyazaei was not allegedly involved in the transfers or alleged to be liable for the fraud. The Heidarys also include Biyazaei's liability on his promissory note as part of the damage total against Yadollahi. They do so apparently because Yadollahi allegedly agreed to guarantee that liability and included it in a security agreement. However, the cross-complaint contains no cause of action to enforce the guarantee, and its cause of action against Yadollahi for foreclosure of the security agreement seeks foreclosure only to the extent of Yadollahi's own promissory note.

Finally, the Heidarys' ambitious damage calculations cannot be saved by reliance on their punitive damage allegations. Although several causes of action recite that punitive damages are sought, none specify any particular amount. In that situation, if punitive damages are to be awarded in a default judgment, *the defendant must be notified of the specific amount sought prior to entry of the default.* (§ 425.115, subd. (f).) In this case, the Heidarys' statement of damages, specifying for the first time that $500,000 in punitive damages was sought, was not filed until after the default was entered. It was *never* served on appellants. Consequently, no amount of punitive damages could have been awarded.

Unfortunately, it appears that the trial court awarded the damages exactly in accordance with the Heidarys' statement of damages. The numbers set forth in that statement add up exactly to the total damages awarded. Even the Heidarys cannot make the numbers in the cross-complaint come anywhere near that total. It is particularly disappointing because the statement, on its face, bears little resemblance to the claims asserted in the cross-complaint.

Although the cross-complaint contains 18 causes of action, the statement contains only two categories of compensatory damages. One category is a single damage figure for "Principal and Interest due on Promissory Notes." That single figure is inconsistent with the cross-complaint's allegations of each appellant's separate liability on distinct promissory notes. The second category of compensatory damages is $260,000 for alleged "Loss of Real Estate." But this case, as pled, is a business contract and fraud controversy, not a real estate dispute. Indeed, the only reference to real estate we could find was in attachments to the cross-complaint. It seems the assets of each gas station include a lease for the land on which the gas station sits. Those specific leasehold interests are not even referenced in the body of the complaint, nor are there any damages alleged relating to loss of the

leaseholds. ■ The court cannot allow a plaintiff to prove different claims or different damages at a default hearing than those pled in the complaint. (*In re Marriage of Lippel, supra*, 51 Cal.3d at p. 1166.)

■ It is imperative in a default case that the trial court take the time to analyze the complaint at issue and ensure that the judgment sought is not in excess of or inconsistent with it. It is not in plaintiffs' interest to be conservative in their demands, and without any opposing party to point out the excesses, it is the duty of the court to act as gatekeeper, ensuring that only the appropriate claims get through. That role requires the court to analyze the complaint for itself—with guidance from counsel if necessary—ascertaining what relief is sought as against each defaulting party, and to what extent the relief sought in one cause of action is inconsistent with or duplicative of the relief sought in another. The court must then compare the properly pled damages for each defaulting party with the evidence offered in the prove-up. (§ 585, subd. (b) ["[T]he court shall hear the evidence offered by the plaintiff, and shall render judgment in his or her favor for such sum (not exceeding the amount stated in the complaint, in the statement required by Section 425.11, or in the statement provided for by Section 425.115), as appears by such evidence to be just. . . ."].)

The order denying the motion to vacate the default judgment is reversed, and the case is remanded with directions to vacate the default judgment and the entry of defaults against Yadollahi and Biyazaei. Appellants are to recover their costs on appeal.

Sills, P. J., and Rylaarsdam, J., concurred.