Filed 12/16/13  Benassi v. JWN, Inc. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CAROL BENASSI, | |
|     Cross-complainant and Respondent, | G048451 |
|       v. | (Super. Ct. No. 30-2009-00305929) |
| JWN, INC., | O P I N I O N |
|     Cross-defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, James Di Cesare, Judge. Reversed and remanded.

Law Offices of Richard R. Therrien and Richard R. Therrien for Cross-defendant and Appellant.

Carol Benassi, in pro. per., for Cross-complainant and Respondent.

The trial court entered a default judgment totaling over $300,000 in favor of Carol Benassi (Benassi) and against her former business partner, JWN, Inc. (JWN). On appeal, JWN raises several arguments to support its theory the judgment is void. We conclude one has merit; the trial court lacked authority to strike JWN's answer to the cross-complaint and enter its default simply because JWN failed to appear for trial. (*Heidary v. Yadollahi* (2002) 99 Cal.App.4th 857.) For this reason, the judgment is void on the face of the record and must be reversed and remanded.

I

This case concerns a dispute between two companies, each owning a 50 percent interest in Coast Consulting LLC (Coast Consulting), and each complaining about a perceived misuse of funds. Because the record on appeal is sparse, and the briefing fails to give an adequate account of the underlying facts, we have gathered the following background facts primarily from Benassi's cross-complaint. Benassi, the sole owner of C Benassi Architecture, LLC (CBA), provides architecture services and consulting. Judith Neal (Judith) is the primary shareholder of JWN. She and her husband John Neal (John) operate JWN, providing consulting services to the construction industry.

The cross-complaint alleged that in 2006, CBA and JWN created Coast Consulting for the purpose of providing construction related consulting services to the legal and insurance industries. They frequently provided expert witness services to customer embroiled in construction defect cases. They were each entitled to an equal share of the profits (50:50).

Sometime in June 2008, John, Benassi, Richard Therrien, Yeota Christie, and several others decided to create "Asset Holding Corporation," designed to own three subsidiary corporations: (1) Asset Technology Systems, Inc.; (2) Asset Guardian Plan, Inc.; and (3) Coast Consulting. The cross-complaint alleged John and Benassi agreed to

2

finance the formation of the new corporations, under certain conditions, through Coast Consulting.

Several months later, John and Christie announced their intention to form a loan modification company. Benassi objected to John using Coast Consulting's funds to finance this new venture. In her cross-complaint, Benassi asserted John falsely promised to procure a line of credit to finance the loan modification company but instead wrongfully took funds from Coast Consulting. Benassi asserted this wrongful diversion of funds violated Coast Consulting's operating agreement. Benassi later learned John was depositing checks payable to Coast Consulting into a separate bank account.

The cross-complaint alleged that on April 6, 2009, Benassi was locked out of the Coast Consulting offices. John sent her a text message stating he had taken her computer and records. A few days later, Benassi was escorted into the office by a loan modification company employee to retrieve a few personal belongings and several projects Benassi had been working on.

The cross-complaint alleged John retained approximately $5,000 worth of personal possessions, including CBA's accounting records, a computer, and other office equipment. She also alleged John retained all the client information and income generated from Coast Consulting, valued at over $460,000. Benassi asserted she had contacted JWN and John "about their misappropriation of Coast [Consulting] funds in an effort to secure the return of those funds." In addition, Benassi alleged she had requested "an accounting of the funds taken," but she received no response.

The record on appeal contains little information about what transpired after Benassi was locked out of her office. We were able to piece together the basis for JWN's lawsuit only because our record includes a California State Bar order disciplining Benassi's counsel, Gary C. Wykidal, and the order explains how the litigation between Benassi and John started. The State Bar's order states that in April 2009 (the same month Benassi claims she was locked out of Coast Consulting), Benassi obtained several checks

3

totaling $34,221.50, made payable to Coast Consulting.  Sometime between April 2009 and August 2009, Benassi turned these checks over to her attorney, Wykidal, who deposited them in his client trust account.  When John learned about this, he threatened legal action and demanded return of the funds.  John's counsel sent Wykidal a copy of the proposed complaint.  Wykidal was disciplined by the State Bar for returning the money to Benassi on September 10, 2009, via a check made payable to her solely owned corporation, CBA.

The appellant's appendix does not contain a copy of John and JWN's complaint but includes the 59-page register of action from the trial court.  The register states John and JWN filed their complaint on September 25, 2009, a few weeks after threatening legal action.  The complaint was filed against CBA, Benassi, Wells Fargo Bank, and Coast Consulting.  We have no further information as to the facts or allegations underlying John and JWN's complaint.

On March 29, 2010, six months after the complaint was filed, Benassi filed a cross-complaint alleging one cause of action for accounting and damages against JWN, and John, individually.[1]  The register of actions indicates JWN and John filed a demurrer (our record does not contain a copy).  The court's minute order, dated July 15, 2010, stated the demurrer was unopposed.  The court sustained the demurrer, finding the arguments raised to be "well taken," and gave Benassi 14 days leave to amend.

On July 29, 2010, Benassi, individually and as a self-represented litigant, filed her first amended cross-complaint (FACC) alleging the following eight causes of action against JWN, John, and Judith:  (1) breach of fiduciary duty; (2) fraud; (3) conversion; (4) negligence; (5) unfair business practices; (6) breach of fiduciary duty against Judith; (7) accounting; and (8) constructive trust.  The court's December 2, 2010, minute order shows the court considered two separately filed demurrers to the FACC

---

[1]          We note the cross-complaint referred to John as "Jack Neal," and this error was corrected in her first amended complaint.

4

(neither were included in our record). The court sustained JWN and John's demurrer as to the accounting cause of action with leave to amend. As for the remaining causes of action, the court sustained the demurrer without leave to amend but "without prejudice to . . . Benassi's right to file a duly noticed [m]otion for [l]eave to amend which seeks court permission to add additional causes of action." The court explained the original cross-complaint alleged only one cause of action and the court's prior order sustaining the demurrer did not give Benassi leave to file seven new causes of action.

For this same reason, the court also sustained Judith's demurrer without leave to amend. It stated the demurrer was sustained without prejudice and Benassi could file a motion for leave to amend, seeking the court's permission to add Judith as a cross-defendant.

Rather than file a motion for leave to amend, Benassi, as a self-represented litigant, filed a second amended cross-complaint (SACC) on December 17, 2010, alleging one cause of action for accounting against JWN, Coast Consulting, and Does 1-50. She recited the same facts contained in her prior complaint, and incorporated allegations that would support multiple causes of action but all placed under a single heading, titled "Accounting."

For example, the first paragraph of the accounting cause of action asserted, "The transfers of funds by [c]ross-defendants . . . were wrongful, fraudulent, and improper, and [they] interfered with [her] interests in the funds by misappropriating and otherwise wrongfully and illegally converting said funds without permission." Benassi also alleged, "Unless cross-defendants are enjoined from continuing to utilize Coast [Consulting's] funds for their own use . . . and unless they are enjoined from continuing to collect, receive, interfere with, meddle with, or dispose of said funds of Coast [Consulting, Benassi] will suffer great and irreparable harm . . . ."

5

On January 18, 2011, JWN filed an answer to the SACC. In June 2012, the court granted the Weintraub Law Group's request to be relieved as JWN's counsel on the grounds it had not paid attorney fees and costs.

On October 15, 2012, the trial court issued a minute order stating the trial was scheduled to begin at 9:15 a.m., and there was no appearance by JWN. The order indicated Benassi was present as a self-represented litigant. The court ordered JWN's answer stricken and default entered. The court scheduled the default prove-up hearing for November 16, 2012. Our record does not contain a reporter's transcript of this hearing.

On November 16, 2012, Benassi appeared in court and submitted documents to support the default prove-up. The court continued the hearing to January 25, 2013.

On January 25, 2013, the court issued a minute order stating the following: Benassi, "self-represented," was present with attorney Wykidal. The court considered testimony from Benassi and Wykidal. The court accepted seven exhibits that included income summaries and bank account receipts. The minute order stated, "The [c]ourt having fully considered the arguments of all parties, as well as the evidence presented, now rules as follows: [¶] The [c]ourt finds judgment for [c]ross-[c]omplainant . . . Benassi against . . . JWN . . . in the amount of $289,567.09 plus $5,000, plus interest and attorney fees pursuant to [the] default attorney fee schedule."

On February 1, 2013, Wykidal prepared a judgment and a statement of decision for the trial court to sign. A few days later, JWN hired Richard R. Therrien, who immediately filed an "objection" to the proposed judgment and statement of decision.

JWN alleged the judgment was void because the cross-complaint only alleged one cause of action for accounting, which is not a stand-alone cause of action. In addition, JWN noted the statement of decision referred to a breach of fiduciary duty, but

6

there was no such cause of action alleged in the SACC.  Finally, JWN argued the statement of decision was incoherent and discussed matters beyond what was raised in the cross-complaint (namely Benassi and Wykidal's "money laundering" scheme).  JWN stated it filed a formal complaint with the State Bar against Wykidal, he was disciplined in 2011, and he prepared a statement of decision contrary to the State Bar's findings and conclusions.  JWN asserted the statement of decision is a "misrepresentation and fraud" upon the court.

The court scheduled a hearing for March 14, 2013.  The reporter's transcript of this hearing indicates the court stated it scheduled the hearing to consider JWN's objection to the statement of decision.  At the hearing, Wykidal argued JWN did not have the ability to make an objection because on October 15, 2012, the court struck JWN's answer and entered its default.  JWN's counsel argued it had standing to object because a default judgment can be set aside within six months if it is void under Code of Civil Procedure section 473, subdivision (d).[2]

The court stated, "But that is not before me.  I'm not going to issue a statement of decision.  It's a default matter."  The court told Wykidal there was no right to a statement of decision.

JWN asked the court to consider its objection to the judgment.  The court stated the arguments presented in JWN's opposition lacked merit, and in any event, the arguments could not be presented after a default had been entered.  The court signed the judgment, which was filed on March 22, 2013.

The judgment stated the court found in favor of Benassi on her accounting cause of action against JWN.  It ordered JWN to pay $301,283.09.  It calculated this figure based on the following evidence presented at the prove up hearing: "A.  Unaccounted withdrawals by [John] $59,278.85[;]  [¶]  B.  Advances to

---

[2]        All further statutory references are to the Code of Civil Procedure.

7

[John]-controlled entities from [Coast Consulting's] account $57,983.64[;] [¶] C. Value of computers and furnishings at [the time of] Benassi lock-out $23,039.11[;] [¶] [and] D. Accounts receivables of [Coast Consulting] on [April 1, 2009] $438,832.57[.]"

The court determined the above totaled $579,134.17, of which Benassi was entitled to 50 percent ($289,567.09), plus $5,000 for the loss of her personal possessions from when she was locked out of Coast Consulting, plus $6,716 in costs. These figures comprised the final judgment of $301,283.09. JWN filed an appeal from the March 22, 2013, default judgment.

## II

### A. *The Judgment is Void on the Face of the Record*

JWN argues the default judgment is void on its face because the court lacked authority to strike its answer to the SACC and enter its default simply for failing to appear for trial. We agree.

We find instructive *Heidary, supra,* 99 Cal.App.4th 857, a case written by a different panel of our colleagues at this court. In that case, "Farzad Yadollahi and Fariborz Biyazaei appeal[ed] from the denial of their motion to set aside a $943,000 default judgment entered against them jointly on a cross-complaint. Appellants contend[ed] the judgment is void because their default was improperly based upon their failure to appear at a trial for which they were given no notice." (*Id.* at p. 859.) The court concluded, "Even assuming appellants had been given proper notice of the trial (which they were not) the court had no authority to enter their defaults for failure to appear." (*Ibid.*)

In *Heidary,* the court explained appellants were not governed by section 473, subdivision (b) (permitting parties to seek relief from their own mistake or excusable neglect), but rather appellants were seeking relief from a void judgment. (*Heidary, supra,* 99 Cal.App.4th at p. 862.) The court noted it was well settled the court has authority to set aside a void judgment at any time. (*Ibid.*; citing *Rochin v. Pat*

8

*Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1239 [judgment void on its face subject to collateral attack any time]; *Plotitsa v. Superior Court* (1983) 140 Cal.App.3d 755, 761 [default void on face of record subject to challenge at any time irrespective of lack of diligence in seeking to set it aside within six-month period of section 473].)

The court concluded, "And in this case, the record does show the default order, and hence the judgment, was void on its face. Simply stated, the court had no power to order the entry of appellants' default when they failed to appear for trial. [Citations.]" (*Heidary, supra,* 99 Cal.App.4th at p. 862.) The court found analogous the decision in *Wilson v. Goldman* (1969) 274 Cal.App.2d 573, stating, "In *Wilson*, the facts are nearly identical to this case. The only distinguishing factor is that the defendant in that case *did* receive proper notice of the trial. When he did not appear, the court entered a default at the request of plaintiffs. The plaintiffs then chose to wait until another day to prove up their damages, so no trial was held. The plaintiffs subsequently proved damages on an ex parte basis, without notice to defendant. [¶] The *Wilson* court affirmed the order vacating the judgment . . . ." (*Heidary, supra,* 99 Cal.App.4th at pp. 862-863.)

Like our colleagues in *Heidary,* we find the *Wilson* opinion explains the governing law quite clearly: "Section 585[3] . . . does not authorize the entry of any default in cases where an answer is on file, *whether the defendant does or does not appear at the time the action is called for hearing.* [Citations.] Where the defendant who has answered fails to appear for trial 'the plaintiff's sole remedy is to move the court to proceed with the trial and introduce whatever testimony there may be to sustain the

---

3         "Section 585 is the general statutory authority for default judgments. It provides that '[j]udgment may be had, if the defendant fails to answer the complaint, as follows: . . . .' It then goes on to specify the procedures for obtaining a default in cases where the defendant failed to file an answer or other appropriate response within the time specified in the summons." (*Heidary, supra,* 99 Cal.App.4th at p. 863, fn. 4.)

9

plaintiff's cause of action.' [Citation.] In such case a plaintiff is entitled to proceed under the provisions of . . . section 594, subdivision 1,[4] and he may do so in the absence of the defendant provided the defendant has been given at least five days notice of the trial. Section 594 does not authorize the entry of the default in the event the defendant fails to appear, and a hearing held pursuant to that section under such circumstances is uncontested as distinguished from a default hearing. [Citations.] [¶] Where a defendant has filed an answer, neither the clerk nor the court has the power to enter a default based upon the defendant's failure to appear at trial, and a default entered after the answer has been filed is void [citations], and is subject to expungement at any time either by motion made pursuant to . . . section 473 or by virtue of the court's inherent power to vacate a judgment or order void on its face. [Citations.] Here the plaintiffs did not proceed to trial on the date set and for which notice of trial had been served. Instead they obtained an entry of defendant's default beyond the power and authority of the court to grant. Such a void 'entry of default' cannot excuse compliance with . . . section 594, subdivision 1. Defendant's answer placed in issue factual questions concerning liability and damages. When the trial of those matters actually took place at plaintiffs' instance on October 16, 1967, some five months after the trial date, defendant was not in default and was entitled to notice of the hearing as provided in the code section. No such notice was given. A judgment made after a trial held without the notice prescribed by . . . 594, subdivision 1 is not merely error; it is an act in excess of the court's jurisdiction. [Citation.]" (*Wilson, supra,* 274 Cal.App.2d at pp. 576-577.)

---

4        Section 594 provides in pertinent part: "'[E]ither party may bring an issue to trial or to a hearing, and, in the absence of the adverse party, unless the court, for good cause, otherwise directs, may proceed with the case and take a dismissal of the action, or a verdict, or a judgment, as the case may require; provided, however, if the issue to be tried is an issue of fact, proof shall first be made to the satisfaction of the court that the adverse party has had 15 days' notice of such trial or five days' notice of the trial in an unlawful detainer action . . . ." (*Heidary, supra,* 99 Cal.App.4th at p. 863, fn. 5.)

10

The *Heidary* court explains that since the *Wilson* case, "the Legislature has expanded the law pertaining to default, which now specifically allows an answer to be stricken and a default entered as a sanction for the defendant's extreme misuse of the discovery process. (§ 2023, subd. (b)(4); see, e.g., *Greenup v. Rodman* (1986) 42 Cal.3d 822.) However, that provision has no application to the situation where defendant simply fails to appear at trial. Moreover, even if the default here could otherwise be properly characterized as a 'sanction,' analogous to the discovery sanctions, it could not be sustained. Section 2023 specifically requires notice to the affected party and an opportunity to be heard *before* imposition of any sanction. (§ 2023, subds. (b) & (c).)" (*Heidary, supra,* 99 Cal.App.4th at p. 864.)

In the case before us, like the *Wilson* and *Heidary* cases, the trial court had no authority to enter JWN's default when it failed to appear at the trial. Of course, the court's error in *Heidary* "was compounded by the fact appellants were never given notice of the trial," however, that court concluded the lack of notice was "irrelevant in establishing their right to relief." (*Heidary, supra,* 99 Cal.App.4th at p. 864.) In *Heidary,* the court concluded, "Even assuming appellants had been properly noticed, the court's only options when they did not appear were to proceed with the trial in their absence, or to continue the trial." (*Ibid.*) It reasoned that because the court chose to continue the trial and allowed the plaintiff to put on their proof of damages at a later date, the appellants were entitled to notice of what amounted to a continued trial date. "Because they did not receive any, the judgment entered against them is void." (*Ibid.*)

Similarly, here the court's only options when JWN did not appear at the trial was to proceed with the trial or continue the trial. The court had no authority to strike JWN's answer and enter a default based on its failure to appear at trial. The resulting judgment is void on the face of the record. (*Heidary, supra,* 99 Cal.App.4th at p. 862.)

11

*B. The Accounting Claim*

Because we have determined the matter must be reversed and remanded, we will address JWN's second issue on appeal only because it is likely to be raised again below. JWN argues the default judgment is void on its face because a claim for an accounting does not state a cause of action for which relief can be given. Not so.

A claim for an accounting may take the form of either a legal remedy or an equitable claim. If alleged as a legal remedy, the "request for a legal accounting must be tethered to relevant actionable claims." (*Hafiz v. Greenpoint Mortgage Funding, Inc.* (N.D. Cal. 2009) 652 F.Supp.2d 1039, 1043.) The cases cited by JWN discuss this form of accounting claims. (See *Batt v. City and County of San Francisco* (2007) 155 Cal.App.4th 65 [taxpayer brought class action against city for tax refund], disapproved on other grounds in *McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613; *Duggal v. G.E. Capital Communications Services, Inc.*, (2000) 81 Cal.App.4th 81 [causes of action barred by the Federal Communications Act's "filed rate doctrine" and, therefore, right to accounting also fails because claim was derivative to underlying claims].)

However, if alleged as an equitable claim, a plaintiff need only allege that (1) "a relationship exists between the plaintiff and defendant that requires an accounting"; and (2) "some balance is due the plaintiff that can only be ascertained by an accounting[.]" (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179 [dispute over partnership assets basis for equitable accounting claim].) The relationship between the parties need not be fiduciary; "[a]ll that is required is that "some relationship" exists that requires an accounting. [Citation.] The right to an accounting can arise from the possession by the defendant of money or property which, because of the defendant's relationship with the plaintiff, the defendant is obliged to surrender. [Citation.]" (*Id.* at pp. 179-180.) "An action for accounting is not available where the plaintiff alleges the

12

right to recover a sum certain or a sum that can be made certain by calculation. [Citation.]" (*Id.* at p. 179.)

Such was the case here. Benassi's SACC pled a claim for equitable accounting. Based on her partnership relationship, Benassi asserted she is entitled to an accounting of her share of the Coast Consulting profits. She requested financial information to determine how much she was owed after being locked out of the offices. Benassi claimed she was not in possession of the materials necessary to reduce her claim to a sum that could be made certain by a few simple calculations. She could only estimate she was owed over $460,000 in lost income. Based on the above, we conclude Benassi's SACC raises a viable equitable accounting claim for which a judgment could be entered.

## C. No Fraud Upon the Court

JWN asserts the judgment is void because Wykidal made misrepresentations to the trial court and committed fraud by willfully concealing the State Bar's factual findings about Benassi and Wykidal's scheme to take over $34,000 from Coast Consulting. This argument is based *entirely* on the information contained in the proposed statement of decision *prepared by Wykidal*. JWN argues the misstatements and "other egregious representations" are inconsistent with the State Bar's opinion and could not be adopted by the trial court. JWN asserts the court ignored its objections to the statement of decision and judgment. The record belies this contention.

First, the record clearly shows the court rejected the statement of decision. There is no evidence, and JWN points to none, suggesting the court adopted, approved, or condoned any of the statements contained therein. Rather, the court told Wykidal a statement of decision was not permitted when there is a default judgment. Second, the court rejected on the merits (and did not ignore) JWN's argument a default judgment could not be entered on a claim for an equitable accounting. As explained earlier in the opinion, the trial court was right on this point.

13

Contrary to JWN's contention, we found nothing in the court's final judgment or in the record that supports the theory the court agreed with or condoned Wykidal's decision to directly distribute $34,221.50 to Benassi/CBA from his client trust account, knowing there was an ongoing dispute regarding Coast Consulting's funds. Nor is there any language suggesting the court intended to "overturn[] the factual findings of the State Bar . . ." that concluded Wykidal's distribution was wrongful.[5] The trial court's final judgment only concerns evidence of John's "unaccounted withdrawals" and "advances," and the value of Benassi's wrongfully taken property and possessions.

D. *Capacity to Sue*

In its final argument, JWN asserts Benassi is not the lawful assignee of CBA's causes of action and CBA is no longer in good standing and lacked the capacity to sue. To support this argument, JWN included in the appellant's appendix a document that appears to be generated by the Nevada Secretary of State's website and states CBA's limited liability company status was "[p]ermanently [r]evoked." This purported "status" document is actually included twice in the appendix. It is first found on page 139, where it does not appear to be attached to any supporting declaration or authenticating document. It is also found on page 176, attached as one of the exhibits supporting JWN's objection to the judgment. Again it was not authenticated or otherwise supported by a declaration. Benassi argues this evidence was not properly before the trial court or this court.

We will not address this issue because we have resolved the appeal on other grounds. The question of Benassi's standing to sue JWN, and CBA's status can be raised by the parties and addressed, in the first instance, by the trial court.

---

[5]     We wish to make clear that in this opinion we have not, and will not, consider whether the disputed $34,221.50 rightfully belongs to Benassi, CBA or JWN. This dispute is well beyond the scope of our review of the default judgment entered on the SCAA. For this reason, we will not address JWN's argument on this point raised in the opening brief.

14

III

The judgment is reversed and remanded.  In the interests of justice, both parties shall bear their own costs of appeal.


O'LEARY, P. J.

WE CONCUR:


MOORE, J.


ARONSON, J.