[No. E047943. Fourth Dist., Div. Two. Feb. 2, 2011.]

DAKOTA PAYPHONE, LLC, Plaintiff and Appellant, v.
HUGO ALCARAZ, Defendant and Appellant.

**COUNSEL**

Wagner & Pelayes, Dennis E. Wagner, Marty E. Zemming and Brandi L. Harper for Plaintiff and Appellant.

Dominguez Law Group, Aimee Dominguez, Stephen Bruce and Shana O'Sullivan for Defendant and Appellant.

**OPINION**

**RAMIREZ P. J.**—Defendant Hugo Alcaraz (Alcaraz) appeals from the trial court's entry of a default judgment against him, claiming that the default should be set aside because it was obtained through the mistake, fraud and

collusion of his former attorneys. (Code Civ. Proc.,[1] § 473, subd. (b).) Plaintiff Dakota Payphone, LLC (Dakota), appeals from the trial court's order purporting to grant, in part, Alcaraz's motion for a new trial, asserting that the trial court had lost jurisdiction to make such a ruling. Dakota also asserts that Alcaraz's appeal is untimely and should be dismissed. We agree with Dakota's assertion and dismiss Alcaraz's appeal as untimely.[2] Further, although we also agree with Dakota that the trial court had lost jurisdiction to rule upon a motion for a new trial, we hold that it retained the authority to correct the void portion of its judgment. We therefore construe the trial court's December 29, 2008, order as an order modifying a partially void judgment and affirm it as such.

FACTS AND PROCEDURAL HISTORY

Dakota's verified third amended complaint alleged that Dakota entered into 330 purchase agreements with Alcaraz and other defendants not party to this appeal (collectively Defendants). These agreements stated that Dakota would buy approximately 5,836 pay phones from Defendants. Defendants agreed to lease the pay phones from Dakota in what is known as a leaseback (see Rev. & Tax. Code, § 6010.65) and place them in public locations. Alcaraz agreed to personally guarantee each of the 330 agreements.

In its complaint, Dakota alleges causes of action against Defendants for (1) breach of contract, (2) fraud, (3) conversion, (4) an accounting, (5) a constructive trust, and (6) injunctive relief. Defendants allegedly breached each of the agreements in January 2006, when they failed to make their lease payments for the 5,836 pay phones. The unpaid amounts totaled $461,044. Defendants also breached the agreements by (1) entering into similar leaseback agreements with other parties, (2) intentionally failing to purchase the pay phones when the lease agreements expired, (3) intentionally failing to maintain the pay phones, (4) intentionally failing to place the pay phones in the locations designated in the agreements, (5) intentionally failing to notify Dakota of the changes in the locations of the pay phones, (6) intentionally failing to indemnify Dakota for lost equipment, and (7) failing to pay for third party bills related to the pay phones. Dakota alleged specifically against Alcaraz that he breached his guarantee to pay the monies owed, and that he was still in possession of and collecting money from pay phones that

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

[2] Alcaraz filed two requests for judicial notice in this court, one on December 11, 2009, and the other on December 28, 2009. The latter motion was also alternatively a request to allow the production of additional evidence. Because the dismissal of the appeal renders the proposed evidence irrelevant, both requests and the alternative motion are denied. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2 [101 Cal.Rptr.2d 200, 11 P.3d 956].)

belonged to Dakota. These breaches were alleged to have resulted in $45 million in damages to Dakota.

In its second cause of action for fraud, Dakota alleged that Alcaraz had been taking millions of dollars from the companies that were also named as defendants and knew that these companies did not have the money to make the monthly lease payments to Dakota and other investors. Alcaraz allegedly used the money provided by new investors to make monthly payments to prior investors. Dakota and other investors paid Alcaraz "millions of dollars." Indeed, Dakota alleged that it was induced to spend $10,863,000 on pay phones as a result of Alcaraz's fraud. In its prayer for relief, Dakota sought "damages in an amount not less than $45,000,000."

The trial court entered a default judgment against Alcaraz on September 4, 2008, awarding Dakota $45 million in compensatory damages and specifying that $14,968,500 of that amount was based upon the fraud of Alcaraz. Notice of entry of that judgment was served on Alcaraz on September 8, 2008. On September 23, 2008, Alcaraz filed a timely notice of intention to move for a new trial. (§ 659 [notice of intention to move for a new trial must be filed within 15 days of the date of mailing notice of entry of judgment].) Alcaraz asserted that the damages and attorney fees awards were excessive and that Dakota failed to include a statement of damages in its third amended complaint. Dakota opposed the motion, in part based upon its assertion that the trial court lacked jurisdiction to decide the motion.

On December 29, 2008, an order of the trial court was filed purporting to grant the motion for a new trial, in part, to limit the amount of damages attributable to Alcaraz's fraud to the amount set forth in the operative third amended complaint, and denying the motion in all other respects. An amended judgment of default was entered against Alcaraz on January 14, 2009, identical in every respect to the September 4, 2008, judgment except that the amount of the compensatory damages attributed to the fraud of Alcaraz was $10,863,000 (a reduction of $4,105,500). Notice of entry of the amended judgment was served on Alcaraz on January 16, 2009. On February 17, 2009, Alcaraz filed a notice of appeal "from the judgment entered on January 14, 2009 . . . ." On March 4, 2009, Dakota filed what it deemed to be a notice of cross-appeal, challenging the trial court's December 12, 2008, order purporting to grant, in part, Alcaraz's motion for a new trial.[3]

---

[3] Although the motion was heard on December 12, 2008, the order was actually filed on December 29, 2008, and the appeal is deemed to have been taken from that order since the trial court required that a new order and judgment be prepared. (*Luz v. Lopes* (1960) 55 Cal.2d 54, 59 [10 Cal.Rptr. 161, 358 P.2d 289] [notices of appeal are liberally construed to protect right of appeal if reasonably clear what appellant was trying to appeal from, and where

DISCUSSION

A. *Disposition of the Cross-appeal*

 In its cross-appeal, Dakota asserts that the trial court had no jurisdiction to grant Alcaraz's motion for a new trial. An order granting a new trial is an appealable order. (§ 904.1, subd. (a)(2), (4).) Specifically, Dakota alleges that the motion for new trial was denied by operation of law on November 7, 2008, 60 days after notice of entry of the September 4, 2008, judgment was served. (§ 660.) We agree.

 The power of a trial court to rule on a motion for a new trial expires 60 days after (1) the clerk mails the notice of entry of judgment, or (2) a party serves written notice of entry of judgment on the party moving for a new trial, whichever is earlier, or if no such notice is given, then 60 days after filing of the first notice of intent to move for a new trial. (§ 660.) If the motion for a new trial is not ruled upon within the 60-day time period, then "the effect shall be a denial of the motion without further order of the court." (§ 660.) The 60-day time limit provided in section 660 is jurisdictional. Consequently, an order granting a motion for a new trial beyond the relevant 60-day time period is void for lack of jurisdiction. (*Fischer v. First Internat. Bank* (2003) 109 Cal.App.4th 1433, 1450–1451 [1 Cal.Rptr.3d 162].)

 Alcaraz cannot argue that he was disadvantaged by the trial court's decision to continue the hearing on the motion for a new trial. "It is the duty of the [moving] party to be present and see that his motion for a new trial is set for hearing within the statutory [time] period. If it has been inadvertently continued by the court to a date too late under the statute the party should move the court to advance the matter on the calendar. When [the party] is guilty of lack of diligence in the prosecution and presentation of his motion, he cannot complain of the court's inadvertence. And when counsel for both parties consent to a continuance without considering that the extension will be beyond the time the court can act on the motion, the effect is to deprive the court of the power to act. It effectively denies the motion without further order. [Citation.]" (*Meskell v. Culver City Unified School Dist.* (1970) 12 Cal.App.3d 815, 824 [96 Cal.Rptr. 773] (*Meskell*).)

Dakota served Alcaraz's trial attorney with notice of entry of the September 4, 2008, judgment on September 8, 2008. Alcaraz filed his motion for a new

---

respondent could not possibly have been misled or prejudiced]; see also *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 20 [23 Cal.Rptr.3d 490, 104 P.3d 844].)

trial on September 23, 2008. On October 28, 2008, the hearing on the motion was continued to allow for proper service of process; however, the trial court remarked that the hearing needed to be conducted within the statutory timeframe. At a hearing on November 10, 2008, Dakota argued that the motion for new trial had already been denied by operation of law. Despite the trial court's expression of concern that the statutory time limit for it to issue a ruling on the motion may have already passed, Alcaraz sought and obtained a continuance to research the jurisdictional issue. The trial court's order purporting to grant the motion for new trial in part, was filed on December 29, 2008. However, the trial court had no jurisdiction to issue the order at that time because the motion was denied by operation of law on November 7, 2008, 60 days after notice of entry of the September 4, 2008, judgment was served. (§ 660.)

Alcaraz contends that the trial court had jurisdiction to rule on his motion for a new trial in December 2008, because a final judgment in the case was not entered until November 18, 2008, when the issue of his cross-complaint was resolved. We are not persuaded. On January 5, 2009, the trial court ordered that "Alcaraz's cross-complaint be stricken nunc pro tunc as of September 21, 2007, the date it was filed," because Alcaraz was in default at the time of filing, and the cross-complaint should not, therefore, have been accepted and filed by the trial court clerk.[4] A judgment entered nunc pro tunc gives effect to the ruling retroactively from the date cited in the nunc pro tunc order. (*Scalice v. Performance Cleaning Systems* (1996) 50 Cal.App.4th 221, 238–239 [57 Cal.Rptr.2d 711].) Accordingly, the cross-complaint was stricken in September 2007 and could not have affected the finality of the September 4, 2008, judgment.

At oral argument, Alcaraz argued that this court and the trial court were estopped from concluding that the trial court did not have jurisdiction to rule on the motion for new trial, given Alcaraz's detrimental reliance on the

---

[4] On January 5, 2009, Judge Tranbarger signed an order striking Alcaraz's cross-complaint nunc pro tunc and it was filed the same day. On January 12, 2009, a second order was signed by Judge Tranbarger and filed, striking the cross-complaint; however, the second order was not made retroactive to 2007. Indeed, nothing in the second order mentions the legal concept of nunc pro tunc. Both orders reference that the hearing on Dakota's motion to strike the cross-complaint took place on November 18, 2008. At that hearing, Judge Tranbarger stated, "[w]e are resolving [this motion] by striking the Cross-Complaint and holding that the clerk should not have accepted it. And that's the ruling of the Court." Because the trial court stated that the clerk should not have accepted the cross-complaint, we infer that the order striking the cross-complaint nunc pro tunc is the accurate order, and, therefore, we rely on that order. (See *People v. Malabag* (1997) 51 Cal.App.4th 1419, 1422–1423 [59 Cal.Rptr.2d 847] [circumstance of individual case determines whether clerk's transcript or reporter's transcript controls when record is contradictory].)

trial court clerk's filing of his cross-complaint. "The doctrine of equitable estoppel is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment. The elements of the doctrine are that (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. [Citation.]" (*Strong v. County of Santa Cruz* (1975) 15 Cal.3d 720, 725 [125 Cal.Rptr. 896, 543 P.2d 264].)

We analyze the third element first—whether Alcaraz was ignorant of the fact that he was in default. On September 4, 2007, the trial court vacated a default entered against Alcaraz and certain corporate defendants. On September 18, 2007, Dakota moved for a default to be entered against Alcaraz. The trial court entered the default the same day. On September 21, 2007, the trial court corrected its September 4 order nunc pro tunc to reflect that the default was vacated only as to the corporate defendants. On the same date Alcaraz filed both his cross-complaint and his answer to Dakota's third amended complaint. On September 24, 2007, the trial court struck Alcaraz's answer, citing the request for entry of default that had been filed and acted upon on September 18.

Although the September 24, 2007, order did not refer to Alcaraz's cross-complaint, we infer that he was aware that he was in default when he filed that document because (1) the cross-complaint and the answer were filed the same day; and (2) the answer was stricken because Alcaraz's default had been entered on September 18, 2007. Knowing that he was in default, Alcaraz should also have known that he could not file a cross-complaint. (*A & B Metal Products v. MacArthur Properties, Inc.* (1970) 11 Cal.App.3d 642, 647 [89 Cal.Rptr. 873] [upon entry of default subsequent filing of pleadings by defendant is unauthorized and void]; *Heathman v. Vant* (1959) 172 Cal.App.2d 639, 647 [343 P.2d 104] [defaulted defendant is out of court and may not file pleadings].) Accordingly, Alcaraz cannot establish each of the elements for equitable estoppel to apply.

That is not the end of the discussion however. The simple fact that the trial court stated that it was granting the motion for a new trial in part does not mean that is, in essence, what the trial court did. " 'The true measure of

an order . . . is not an isolated phrase appearing therein, but its effect when considered as a whole. [Citations.]' " (*Concerned Citizens Coalition of Stockton v. City of Stockton* (2005) 128 Cal.App.4th 70, 77 [26 Cal.Rptr.3d 735].)

The September 4, 2008, default judgment included an amount for fraud damages in excess of that demanded in the operative third amended complaint. A default judgment entered in excess of the amount demanded in the complaint is void to that extent. (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 826, 829–830 [231 Cal.Rptr. 220, 726 P.2d 1295]; *Heidary v. Yadollahi* (2002) 99 Cal.App.4th 857, 864–865 [121 Cal.Rptr.2d 695] (*Heidary*).) When, as in such cases, the judgment only partially exceeds the trial court's jurisdiction, the trial court can modify the judgment in order to save the portion that was not void. (*Becker v. S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 495 [165 Cal.Rptr. 825, 612 P.2d 915] (*Becker*); see also *In re Marriage of Andresen* (1994) 28 Cal.App.4th 873, 886 [34 Cal.Rptr.2d 147] [void portion of default judgment awarding relief greater than amount in complaint subject to set aside at any time].) "Ordinarily, when a judgment is vacated on the ground the damages awarded exceeded those pled, the appropriate action is to modify the judgment to the maximum amount warranted by the complaint. [Citations.]" (*Ostling v. Loring* (1994) 27 Cal.App.4th 1731, 1743 [33 Cal.Rptr.2d 391] (*Ostling*).) In the instant case it appears that is exactly what the trial court intended. The trial court rejected Alcaraz's argument that the entire judgment must be set aside and asserted that the only change in the judgment would be to conform the amount of fraud damages awarded to those requested in the complaint.

The trial court was within its right to do so. A void judgment is subject to either direct or collateral attack. (*In re Marriage of Lippel* (1990) 51 Cal.3d 1160, 1163 [276 Cal.Rptr. 290, 801 P.2d 1041]; *Julius Schifaugh IV Consulting Services, Inc. v. Avaris Capital, Inc.* (2008) 164 Cal.App.4th 1393, 1396 [79 Cal.Rptr.3d 910].) The trial court may modify its judgment by striking therefrom that portion that is void on the face of the judgment roll (see § 670, subd. (a) for the contents of the judgment roll in case of a default) on its own motion, at any time its attention, by any manner, is called to the error. (*Balaam v. Perazzo* (1931) 211 Cal. 375, 380–381 [295 P. 330] (*Balaam*); *Swycaffer v. Swycaffer* (1955) 44 Cal.2d 689, 691, 694 [285 P.2d 1] [trial court properly struck from judgment matters not put in issue by complaint]; see also *Baird v. Smith* (1932) 216 Cal. 408, 410 [14 P.2d 749]; *Heidary, supra,* 99 Cal.App.4th at p. 862; § 473, subd. (d) [the court has authority to set aside a void judgment at any time, and it is immaterial how the invalidity is called to the court's attention].) Therefore, the trial court had the authority to set aside the void portion of the September 4, 2008, judgment when, on December 29, 2008, it issued an order limiting the damages in the

judgment to those set forth in the operative complaint, although it incorrectly stated that it was partially granting the motion for new trial in doing so.

An order so modifying a judgment is appealable as an order after a final judgment. (*Balaam, supra*, 211 Cal. at p. 381.) However, Dakota's cross-appeal does not challenge the propriety of the order modifying the judgment to comport with the complaint as required by section 580. Rather, Dakota challenges the ability of the trial court to partially grant the motion for a new trial more than 60 days after notice of entry of the September 4, 2008, judgment was served. While the trial court did lack jurisdiction with respect to the motion for a new trial, as indicated above, the trial court had authority to amend its void judgment at any time. To grant Dakota the relief it requests would be to give effect to a void judgment. Thus, the December 29, 2008, order requiring the modification of the judgment is affirmed. The question then turns to whether the January 14, 2009, judgment, which failed to conform with the trial court's order, was appealable.

## B. *Alcaraz's Appeal Must Be Dismissed as Untimely*

 Jurisdiction of the Court of Appeal is limited in scope to the notice of appeal and the judgment appealed from. (*Soldate v. Fidelity National Financial, Inc.* (1998) 62 Cal.App.4th 1069, 1073 [72 Cal.Rptr.2d 404].) Alcaraz has filed a notice of appeal only from the amended judgment entered on January 14, 2009. The question that must be determined is whether Alcaraz timely filed a notice of appeal from that amended judgment. If the appeal is untimely, this court has no jurisdiction to consider it, and it must be dismissed. (Cal. Rules of Court, rule 8.104(b); *Estate of Hanley* (1943) 23 Cal.2d 120, 123 [142 P.2d 423].) The resolution of this issue turns on the question whether the amended judgment superseded the original judgment for purposes of computing the time in which to file a notice of appeal. Citing The Rutter Group treatise on civil appeals and writs, the court in *Torres v. City of San Diego* (2007) 154 Cal.App.4th 214 [64 Cal.Rptr.3d 495] (*Torres*), concluded that when an amended judgment results in a substantial modification of a judgment, the amended judgment super-sedes the original and becomes the one final, appealable judgment in the action. (*Id.* at p. 222.) The question then becomes what is a "substantial modification" of a judgment?

 In *Torres, supra*, 154 Cal.App.4th 214, the issue was whether the amendment of the judgment to include an amount for attorney fees and costs was a substantial amendment, enabling the court to consider the propriety of granting summary judgment. (*Id.* at p. 221.) Again citing The Rutter Group treatise on civil appeals and writs, the *Torres* court concluded that there is no substantial modification to a judgment when it is merely amended to add

costs, attorney fees and interest. (*Torres, supra*, 154 Cal.App.4th at p. 222.) In support of this proposition, the treatise cites *Guseinov v. Burns* (2006) 145 Cal.App.4th 944, 951 [51 Cal.Rptr.3d 903], which holds that when a judgment awards interest, the later amendment of the judgment to insert the actual dollar amount of interest awarded is not a substantial modification. (Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 2010) ¶ 3:56.3, p. 3-28 (rev. # 1, 2010).) The cases that have developed this rule with respect to attorney fees and interest appear to find ultimate support for their position in the line of cases that hold that postjudgment awards of attorney fees, costs and interest are separately appealable matters collateral to the actual judgment if they are not included therein. (See *Robinson v. City of Yucaipa* (1994) 28 Cal.App.4th 1506, 1517–1518 [34 Cal.Rptr.2d 291] [Fourth Dist., Div. Two]; *Grant v. List & Lathrop* (1992) 2 Cal.App.4th 993, 996–998 [3 Cal.Rptr.2d 654]; *Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 46 [269 Cal.Rptr. 228].) In light of these rulings and the line of cases that they represent, it makes sense to conclude that a separately appealable order after final judgment does not substantially modify the judgment itself for purposes of computing the time in which to file a notice of appeal. Any problem the parties might have with the amendment can be pursued through a separate appeal of the postjudgment order. Thus, while *Torres* cites the "substantial modification" rule, its holding is more properly attributed to the line of cases cited above. We must look elsewhere for a resolution to our question.

In *Stone v. Regents of University of California* (1999) 77 Cal.App.4th 736 [92 Cal.Rptr.2d 94] (*Stone*), cited by The Rutter Group treatise in support of its statement of the "substantial modification" rule as reflected in *Torres*, the judgment was amended to require the losing party to pay an additional nine months of defense costs. (*Stone*, at p. 743.) The Court of Appeal found that the amendment "was undeniably one of substance" because it materially affected the rights of the parties. (*Id.* at p. 744.) Thus, *Stone* defines a "substantial modification" of a judgment as one materially affecting the rights of the parties.

*Stone* in turn cites *George v. Bekins Van & Storage Co.* (1948) 83 Cal.App.2d 478 [189 P.2d 301] (*George*). In that case judgment was entered in favor of the plaintiffs and against Bekins on February 5, 1947. The trial court denied Bekins's motion for a new trial but also ordered that the conclusions of law and judgment be amended to include a finding that the defendants other than Bekins were entitled to judgment in their favor against the plaintiffs for their costs. A formal written order was entered to that effect on April 23, 1947. (*Id.* at pp. 479–480.) Bekins filed a notice of appeal from the February 5, 1947, judgment, and the plaintiff moved to dismiss on the ground that that was not the final judgment in the case. (*Id.* at p. 480.) The court ultimately concluded that the amendment did not in any way affect

the resolution of any matters in controversy between the plaintiffs and Bekins; that the February 5, 1947, judgment was final as to all issues between those parties; that it was therefore the appealable judgment; and that the appeal should not be dismissed. (*Id.* at p. 482.) This is not a novel concept. As stated in *Justus v. Atchison* (1977) 19 Cal.3d 564, 568 [139 Cal.Rptr. 97, 565 P.2d 122], disapproved on other grounds in *Ochoa v. Superior Court* (1985) 39 Cal.3d 159, 171 [216 Cal.Rptr. 661, 703 P.2d 1], it has long been the settled rule that in a case involving multiple parties, a judgment is final and appealable when it leaves no issues to be determined as to one party.

Nevertheless, in reaching its conclusion, the *George* court unnecessarily digressed into an analysis of the trial court's right to amend a judgment and the effect thereof. All of this discussion is dicta. The court first considered the fact that a trial court has the authority to amend a judgment under the power given to it by section 662 and also has the inherent authority to correct " 'clerical error' " in its judgments, defined as "all errors, mistakes, or omissions which are not the result of the exercise of the judicial function." (*George, supra*, 83 Cal.App.2d at pp. 480–481.) It makes the statement that an amendment to correct clerical error "leaves the original judgment otherwise effective and unimpaired." (*Id.* at p. 481.) Nevertheless, the court thereafter, citing to *Spencer v. Troutt* (1901) 133 Cal. 605 [65 P. 1083] (*Spencer*), states the rule as follows, "if a party can obtain the desired relief from a judgment before it is amended, he must act—appeal therefrom—within the time allowed after its entry. If the amendment materially and in a substantial respect affects the judgment and the rights of a party against whom it is rendered, and a party desires relief therefrom, he must appeal from the corrected judgment within the time allowed after entry thereof. [Citations.]" (*George, supra*, at pp. 481–482.)

In the case law this discussion of "clerical error" versus "judicial error" is consistently related to the trial court's ability to amend a judgment, whether it be on its own motion at any time (in the case of "clerical error") or according to statutory authority upon timely noticed motion (in the case of "judicial error"). (See, e.g., cases collected in Notes of Decisions, § III, Amendment or Correction of Judgment, 15 West's Ann. Code Civ. Proc. (1979 ed.) foll. § 473, pp. 172–194.) Ultimately, however, the question whether a trial court has the ability to amend and under what circumstances it may amend a judgment is a different question than what effect any such modification might have on the time in which to appeal from the judgment. Thus, the question of "clerical error" versus "judicial error" does not resolve the issue.

The crux of the problem, instead, is whether there is a substantial change in the rights of the parties such that allowing an amendment nunc pro tunc (relating back to the original judgment) would unfairly deprive them of the

right to contest the issue on appeal or otherwise. Having just recognized that the discussion of "clerical error" and "judicial error" deals with the trial court's ability to amend a judgment and not with the effect of such an amendment on the right to appeal, the reasons for the trial court's ability or inability to act by means of an order entered nunc pro tunc do inform the ultimate question as phrased by *Spencer, supra,* 133 Cal. at page 607 that an amendment that materially and substantially affects the rights of the parties results in a new judgment that may thereafter be challenged. Indeed, in *Spencer,* it was precisely because the trial court's attempted entry of an order nunc pro tunc effectively cut off the petitioner's right to appeal that the amendment was found to be material.[5] (*Spencer,* at p. 607.) This is why the "clerical error" standard allows nunc pro tunc amendments. In those circumstances, the parties have already litigated the issues and there is some evidence that they are aware of the terms of the true judgment, despite the error in the actual judgment entered, and have had the opportunity to pursue their statutory challenges to the judgment. (See, e.g., *Ames v. Paley* (2001) 89 Cal.App.4th 668, 673–674 [107 Cal.Rptr.2d 515] [clerical error occurred when judgment, to have been entered per settlement agreement, differed from that agreement]; *Russell v. Superior Court* (1967) 252 Cal.App.2d 1, 8 [59 Cal.Rptr. 891] [clerical error includes correction of that which was agreed to and ordered in open court]; *Boyd v. Lancaster* (1939) 32 Cal.App.2d 574, 579 [90 P.2d 317] [nunc pro tunc order corrects deficiencies in judgments actually made so to make them conform to the truth].) On the other hand, there are only a limited number of ways to correct "judicial error," all of which involve notice and an opportunity to be heard. (See *Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1237 [79 Cal.Rptr.2d 719].) This is because in those circumstances it has generally been held unfair to the parties to allow the trial court to make a change that they cannot, thereafter, challenge. (See, e.g., *Spencer, supra,* 133 Cal. at p. 607; *Hamilton v. Laine* (1997) 57 Cal.App.4th 885, 892 [67 Cal.Rptr.2d 407] [court cannot issue order nunc pro tunc so as to deprive party of right to redress on its outstanding lien]; *Young v. Gardner-Denver Co.* (1966) 244 Cal.App.2d 915, 919 [53 Cal.Rptr. 522] [judgment may be entered nunc pro tunc only to preserve fruits of litigation otherwise lost or to correct deficiency in recordation of court's true intent, not to deprive party of new trial already ordered]; *Felton Chemical Co. v. Superior Court* (1939) 33 Cal.App.2d 622, 628 [92 P.2d 684] [court could not amend a judgment nunc pro tunc to "change

---

[5] The petitioner had actually filed and lost an appeal from the original judgment. However, because it was later discovered that he had not been named in that judgment, it was determined that his first appeal was a nullity because, not being named in the judgment, he was not an aggrieved party, and the appellate court therefore had no jurisdiction. Because the petitioner could not have appealed from the first judgment, the trial court could not amend it nunc pro tunc and thereby render his subsequent appeal untimely. (*Spencer, supra,* 133 Cal. at pp. 607–609.)

and enlarge upon the original judgment in such a manner as to vary the rights of the parties as they were fixed by the original decision"].) Thus, it is ultimately the parties' ability to challenge the ruling that is key. The right we are concerned with materially affecting is the right to appeal.

As indicated above, in the instant case, the trial court properly modified the judgment to strike that portion of the damages that was in excess of those requested in the operative complaint. (*Becker, supra*, 27 Cal.3d at p. 495; *Balaam, supra*, 211 Cal. at pp. 380–381.) " 'If the judgment is only partially void, and the void part is severable, that part alone may be collaterally attacked and the balance will remain effective. . . .' [Citation.]" (*Perini v. Perini* (1964) 225 Cal.App.2d 399, 408 [37 Cal.Rptr. 354]; accord, *Harwell v. Harwell* (1938) 26 Cal.App.2d 143, 145 [78 P.2d 1167].) In *Jones v. World Life Research Institute* (1976) 60 Cal.App.3d 836 [131 Cal.Rptr. 674], the court held that the award of interest on the judgment for a period of time prior to the rendition and entry of that judgment was contrary to law and therefore void. (*Id.* at p. 848.) Although the void portion of the judgment was held subject to collateral attack and was struck from the judgment, the balance of the judgment was held valid. (*Ibid.*) In *Claudius v. Melvin* (1905) 146 Cal. 257, 259–260 [79 P. 897] the court held, "It is a well-settled proposition that a judgment may be in part valid and in part void. Unless the two portions are so inseparably connected that the one part cannot be declared void without vitiating the other, the rule is, that the portion which is not in excess of jurisdiction may stand and the remainder be considered null. Where a part of the judgment is valid, it may be to that extent enforced, although another provision of the same judgment may be in excess of the power of the court, and for that reason void. [Citations.]" Thus, that portion of the September 4, 2008, judgment that was not in excess of the amount stated in the operative complaint remained viable and subject to challenge by Alcaraz.

In *Becker, supra*, 27 Cal.3d at page 495, the Supreme Court held that in cases such as that presently under consideration, where default judgments are modified to reduce damages to the amount stated in the complaint, "[f]airness to the plaintiffs and judicial economy" require that the judgment be modified to save that portion that was not void rather than be vacated in its entirety. It thus implicitly recognized that in such situations the defendant has already had a full opportunity to make all challenges that were available, and it would be unfair to allow any additional challenges that would flow from reopening the entire judgment.

Here, Alcaraz was not deprived of his right to contest the September 4, 2008, default judgment, or any other ruling of the trial court. "It is not

inconsistent nor improper to file both a notice of appeal and a motion for a new trial. . . . If the motion for new trial be granted the judgment is vacated and the appeal therefrom becomes ineffective. [Citation.]" (*Neff v. Ernst* (1957) 48 Cal.2d 628, 634 [311 P.2d 849].) Thus, if Alcaraz was dissatisfied with the September 4, 2008, judgment, he could have filed an appeal as well as his motion for a new trial. Indeed, in order to protect his rights he could and should have done so prior to the expiration of 90 days from service of notice of entry of the judgment when the trial court had not yet ruled on his motion for a new trial. (*Miller v. United Services Automobile Assn.* (1989) 213 Cal.App.3d 222, 227 [261 Cal.Rptr. 515]; *Meskell, supra*, 12 Cal.App.3d at p. 824 [party charged with knowledge of statutory time periods]; Cal. Rules of Court, rule 8.108(b).)

Arguably an alteration in the judgment involving in excess of $4 million appears to be substantial and to materially affect the rights of the parties. However, when the issues are considered in a less superficial fashion and under the rubric of the case law discussed above (which reveals that the "rights" with which we are concerned is the right to appeal), the alteration is not substantial and does not materially affect the parties' rights under the circumstances of this case. Though the monetary positions of the litigants have been changed, in doing so the trial court did not deprive the parties of their ability to challenge any portion of the judgment. Rather, it merely altered their positions in the litigation to accord with the way things are required to be by law. As with postjudgment orders filling in the blanks for attorney fees and interest discussed above, any challenge to the modification itself could have been raised on appeal from the postjudgment order modifying the judgment. (*Balaam, supra*, 211 Cal. at p. 381; § 904.1, subd. (a)(2).) All other parts of the judgment not affected by the modification remained valid and could have been challenged by appeal. "A party who fails to take a timely appeal from a decision or order from which an appeal might previously have been taken cannot obtain review of it on appeal from a subsequent judgment or order. [Citations.]" (*Ostling, supra*, 27 Cal.App.4th at p. 1749.) Consequently, Alcaraz's attempted appeal from the amended judgment filed January 16, 2009, was untimely and must be dismissed.[6]

---

[6] On August 7, 2009, this court issued an order denying Dakota's motion to dismiss Alcaraz's appeal for being untimely. The court explained that the motion was denied because the amended judgment *did* substantially modify the original judgment. This court found that the reduction in the fraud damages involved the exercise of judicial discretion. The appellate record in the instant case was filed on September 4, 2009—approximately one month after this court's order denying Dakota's motion to dismiss. Upon our review of a complete record and further analysis of the law, we conclude that our original holding was incorrect for the reasons explained *ante*. (See generally *Delmonico v. Laidlaw Waste Systems, Inc.* (1992) 5 Cal.App.4th 81, 83, fn. 1 [6 Cal.Rptr.2d 599] [appellate ruling does not become law of the case unless it reflects a decision on the merits considered by a panel of three justices and agreed upon by the majority].)

## DISPOSITION

Alcaraz's appeal is dismissed as untimely. The trial court's December 29, 2008, order, challenged by Dakota, is construed as an order modifying a partially void judgment and is affirmed as such. Dakota is awarded its costs on appeal.

Richli, J., and Miller, J., concurred.