Filed 8/29/24  City of Claremont v. Sandblossom CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| CITY OF CLAREMONT, | B334218 |
| Plaintiff, | (Los Angeles County Super. Ct. No. 19PSCP00027) |
| v. | |
| SANDBLOSSOM, LLC, | |
| Defendant and Respondent; | |
| CALIFORNIA RECEIVERSHIP GROUP, | |
| Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Peter Hernandez, Judge.  Affirmed.

California Receivership Group, Mark S. Adams and Thomas A. Yatteau for Appellant.

Stoner Carlson and Richard A. McDonald for Defendant and Respondent.

Sandblossom LLC owns certain residential property (the property) in Claremont that had fallen into disrepair. The City of Claremont declared the property a public nuisance and obtained an order from the superior court appointing California Receivership Group (CRG) as a receiver to oversee the property's rehabilitation. CRG eventually filed a motion for an order discharging it as the receiver, settling all accounts, and exonerating CRG's surety (the motion for discharge). The court granted the motion in part. Thereafter, the parties disputed the meaning of the order and the court issued an order clarifying its ruling. CRG appealed. It contends: (1) The court erroneously decided that a receivership lender was not entitled to interest on its loan; (2) The court's order improperly amended the order appointing CRG as the receiver; and (3) The court improperly impaired the lender's interest without giving the lender an opportunity to be heard.

Sandblossom filed a motion to dismiss the appeal on the ground that it was untimely. We deny that motion. On the merits, we disagree with CRG's contentions, and affirm the trial court's order.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY

In January 2019, the City of Claremont (the City) filed a petition in the superior court alleging that Sandblossom had allowed its property to fall into disrepair and become a public nuisance, endangering the health and safety of the public. The City sought, among other relief, the appointment of a receiver to oversee the rehabilitation of the property.

On February 10, 2020, the court issued an order (the appointment order) appointing CRG as the receiver for the

2

property.[1]  The appointment order granted to CRG the power to "take full and complete control of the . . . property," and to "borrow funds to pay for repairs necessary to correct the conditions and secure that debt with a super-priority lien on the . . . property."  More particularly, the court authorized CRG "to fund an initial $25,000 receiver's certificate with super priority status to cover the costs of securing the . . . property, cleaning it out, getting contractors in to bid the cost of rehabilitation, and any of the other initial costs of the receivership."  (Capitalization omitted.)

On February 13, 2020, Sandblossom appealed the appointment order and, on February 21, 2020, posted an undertaking to stay the order.  (Code Civ. Proc., § 917.5.)  Notice of the undertaking was served on CRG and filed with the court on February 26, 2020.

On August 24, 2021, we affirmed the appointment order in an unpublished opinion.  (*Sandblossom I*, *supra*, B304298.)

While the appeal in *Sandblossom I* was pending, Sandblossom completed remediation work on the property. The City gave final approval of the project's completion on November 10, 2021.

On September 8, 2022, CRG filed its motion for discharge. CRG requested "the full amount of fees and costs incurred in the appointment, to be paid through an increase to the existing receiver's certificate and/or paid through the undertaking previously submitted with the court."  (Capitalization omitted.)

---

[1] Additional procedural and factual history leading up to the appointment of a receiver is described in *City of Claremont v. Sandblossom, LLC* (Aug. 24, 2021, B304298) [nonpub. opn.] (*Sandblossom I*).

Neither the motion nor the supporting memorandum of points and authorities, however, requests a specific sum. In the memorandum of points and authorities, CRG stated that there were "two substantial categories of amounts owed by the receivership estate. The first is the receiver's certificate recorded in February 2020, that includes the principal and interest to date, along with $36,731 advanced by the receivership lender to pay the delinquent property taxes to avoid a tax sale. The second amount [is] the outstanding fees, costs, and advances owed to [the receiver] for work completed." In a supporting declaration, CRG's president states that the court should "authorize an increase to the existing [receivership] certificate by the additional amounts owed," which "should include" $98,257.51 in fees, costs, and advances. (Capitalization omitted.) In a proposed order submitted with the motion for discharge, CRG sought "to increase the existing receiver's certificate . . . to a total amount authorized of $159,988.51." (Capitalization omitted.)

Sandblossom opposed CRG's motion on the ground that the receiver could not recover sums claimed for work performed while the stay was in effect, and the amounts claimed are unconscionable.

On March 15, 2023, the court granted CRG's motion in part (the March 15 order). The minute order stated: "Despite the lack of court authorization, the court is inclined to grant the reimbursement for the property taxes paid in the amount [of] $36,731.06. However, . . . the court is troubled by the lack of specificity concerning other fees and costs allegedly incurred by [CRG] in this case during the relevant period of time before and after the stay. It also believes the fees are not consistent

4

with the amount of work that needed to be done (or not done) during the relevant non-stay/stay periods. The court is not inclined to order reimbursement during the period of time after [Sandblossom] posted the undertaking on February 21, 2020. This pre-stay amount totals $21,716.07."

The court concluded: "As a result, the court will reduce the following fees and costs in addition to the repayment of the property taxes to $58,447.13 and order, if necessary, that the receiver's certificate be increased from $25,000.00 to reflect the new amount."[2] (Capitalization omitted.)

Neither party appealed from the March 15 order.

Sandblossom and CRG thereafter disputed the amount to which the court had authorized an increase in the receiver's certificate. According to CRG, the "principal balance of the receiver's certificate is increased from $25,000 to $83,447.13." (Capitalization omitted.) Sandblossom asserted that the court authorized an increase to $58,447.13, and, on July 7, 2023, tendered that sum to CRG with a request that CRG release its liens on the property. CRG rejected the tender, stating that Sandblossom would "have to get an order from the judge confirming that no interest was due on the certificate."

On August 10, 2023, Sandblossom filed a motion seeking an order to show cause regarding contempt (the contempt motion). Sandblossom alleged that the court's March 15 order authorized CRG to increase the amount of the receiver's

---

[2] Although the court referred to the "*following* fees and costs" (italics added), suggesting an ensuing itemization of particular fees and costs, the order does not include such an itemization.

certificate to $58,447.13, and that CRG violated that order by increasing the amount to $83,447.13.

CRG opposed the contempt motion, arguing that the court's March 15 order "reduced [CRG's] request for repayment of [its] outstanding fees and costs from $98,257.71 to $58,447.13 and authorized [CRG] to increase the initial $25,000 receiver's certificate to reflect the new amount." (Capitalization omitted.) CRG apparently interpreted the phrase, "the new amount" in the court's March 15 order to mean $83,447.13—the sum of the original certificate's amount of $25,000 plus $58,447.13.

On October 4, the court denied Sandblossom's contempt motion, and construed the motion as a motion "seeking clarification of the court's March 15 order." (Capitalization omitted.) In its written order filed on October 12, 2023 (the October 12 order), the court stated that "the court's language [in the March 15 order] that 'the receiver's certificate be increased from $25,000.00 to reflect the new amount' stated therein was intended to convey that the certificate be increased to $58,447.13 total, not *by* $58,447.13. The amount of $58,447.13 was comprised of $36,731.06 in property taxes, plus $21,716.07 in costs and fees incurred by [CRG] prior to the stay . . . . All other requests for monies were denied." (Capitalization omitted.) The court concluded that the March 15 order "shall be implemented forthwith and without delay."

On December 7, 2023, CRG filed a notice of appeal from the October 12 order.

6

# DISCUSSION

## A. *Sandblossom's Motion to Dismiss the Appeal*

CRG did not timely appeal from the March 15 order; its appeal is from the October 12 order. Sandblossom filed a motion in this court to dismiss the appeal as untimely on the ground that the October 12 order is merely a clarification of the March 15 order, and that the time to appeal therefore relates back to the earlier order. CRG opposed the motion, contending that the issues it raises on appeal arise solely from the October 12 order, and therefore "the concept of relation back is inapplicable."

Whether CRG's appeal relates back to the March 15 order depends on whether the October 12 order constitutes a substantial modification of the prior order. (See *Ellis v. Ellis* (2015) 235 Cal.App.4th 837, 842 (*Ellis*); *Dakota Payphone, LLC v. Alcaraz* (2011) 192 Cal.App.4th 493, 504 (*Dakota Payphone*).) "If so, the revised judgment [or order] supersedes the original and becomes the final, appealable judgment [or order] in the action. [Citation.] If not, any changes are considered to relate back to the original judgment and the time to appeal runs from the entry of the first judgment." (*Ellis*, *supra*, at p. 842.)

A substantial modification is one that materially affects the right of a party to appeal. (*Ellis*, *supra*, 235 Cal.App.4th at p. 842; *Dakota Payphone*, *supra*, 192 Cal.App.4th at p. 508.) A modification materially affects the right of a party to appeal if the modification's relation back to the original judgment would " 'unfairly deprive them of the right to contest the issue on appeal.' " (*Ellis*, *supra*, 235 Cal.App.4th at p. 842.) Thus, the materiality of a modification may depend upon the issues appellant raises on appeal. An appeal from a modification order raising an issue that arises from the modification may be timely,

7

while an appeal from the same order raising an issue that could have been asserted on appeal from the earlier order will be time-barred. (See Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2023) ¶ 3:56.5, p. 3-33 [whether a revision commences a new appeal deadline may depend "on whether the absence of a new appeal deadline would *deprive appellant of the ability to challenge the judgment to the extent it is amended*"].)

CRG contends that the three issues it raises on appeal arise solely from the October 12 order. First, the October 12 order erroneously deprived the "receivership lender" of the right to receive payment of interest on its loan to CRG. Second, the October 12 order effectively amended the appointment order by reducing the amount of the receiver's certificate, and the trial court lacked jurisdiction to do so. Third, the receivership lender is an indispensable party and the court erroneously impaired the lender's rights without providing the lender with notice and an opportunity to be heard.

According to CRG, the court agreed with it that the amount of the original receiver's certificate of $25,000 was increased by the lender's payment of $36,731.06 to pay property taxes necessary to avoid a tax sale of the property. Thus, CRG contends, the amount of the debt owed to the lender as of March 15, 2018 was $61,731.06, not including interest on the debt. If, as CRG asserted below, the March 15 order permitted an increase in the receiver's certificate *by* $58,447.13 to a "new amount" of $83,447.13, the $61,731.06 debt would still be covered by the certificate. Although the $83,477.13 was much less than CRG had sought in its discharge motion, CRG explains that it did not appeal because "at least the receivership lender was being

8

fully repaid." It was not until the court's October 12 order, CRG contends, that the court capped the receiver's certificate at $58,447.13, thereby reducing CRG's recovery to less than the debt owed to the lender. Only then, CRG argues, did the particular issues it raises on appeal arise.

We agree with CRG that the issues it raises on appeal arise from the court's clarification in the October 12 order, and if that order is deemed to relate back to the March 15 order, it would render CRG's appeal untimely and " 'unfairly deprive [CRG] of the right to contest the issue[s] on appeal.' " (*Ellis*, *supra*, 235 Cal.App.4th at p. 842.)

Sandblossom contends that "it was already clear" from the March 15 order that the court had rejected CRG's request for funds "to repay the principal and interest advanced by the receivership lender in full, given that the principal was $61,731." Whether the March 15 order was "already clear" on this point, however, is disputed by CRG, and the March 15 order's language is reasonably susceptible of CRG's interpretation that the court had increased the receiver's certificate to $83,447.13. Although the court ultimately rejected CRG's interpretation, the October 12 order implies that the March 15 order was unclear and required the court's clarification. Under these circumstances, we conclude CRG should be permitted to appeal from the October 12 clarifying order and raise the issues arising from that order. Accordingly, we deny Sandblossom's motion to dismiss.

## B.     *The Merits of the Appeal*

### 1.     *The alleged decision denying the lender's right to interest*

CRG contends that the October 12 ruling must be reversed because the court determined that the receivership lender "was not entitled to interest."  Sandblossom argues that CRG did not raise this issue in its motion for discharge below and that CRG has therefore forfeited the issue on appeal.  As CRG points out in its reply brief, however, its opposition to Sandblossom's contempt motion includes an argument that Sandblossom's interpretation of the court's March 15 order should be rejected because it improperly "limit[s] the amount of principal and interest that must be paid to the lender as full repayment on the certificates that were authorized by the court."  (Capitalization omitted.) This is sufficient to preserve the issue for appeal.

CRG does not cite to the record for its assertion that the court decided that the receivership lender was not entitled to interest on its loan,[3] and the court's order does not support the point.  Although CRG's argument is not entirely clear, CRG appears to argue that the October 12 order erroneously implies that the receivership lender will not recover interest on loans the lender made in connection with the receivership, or that the order would have this effect on the lender.[4]  CRG does not, however,

---

[3] CRG's failure to cite to the record violates California Rules of Court, rule 8.204(a)(1)(C).

[4] CRG does not explain how it has standing to assert that the court deprived a third party, the "receivership lender," of interest to which the lender was entitled.  Sandblossom does not raise the issue of standing in its respondent's brief.

10

point to any language in any order that could support such an implication or consequence.

Moreover, CRG has not provided us with an adequate record to evaluate its argument. Our record does not, for example, include any receiver's certificate or other evidence of the lender's account concerning the receivership. Such evidence would presumably show the principal amount of any loan, a rate of interest, the identity of the borrower, the balance due, and whether the lender has recourse to a source of repayment other than the property. Nor does our record include any evidence that the court authorized any increase in the initial $25,000 receiver's certificate prior to the March 15 order. If, for example, the principal and interest due on any court-approved certificate does not exceed the $58,447.13 the court ultimately approved, there would appear to be no issue as to the repayment of principal and interest due under the certificate to the lender; the lender's repayment would be fully secured by the certificate. Even if the lender advanced funds in excess of the $58,447.13 secured by the receiver's certificate, if it has recourse to a repayment source other than the property, such as the borrower or a guarantor, the court's order would appear to have no effect on the lender's right to recover from such sources. In short, whether the lender was precluded from recovering interest on its receivership loan or loans as a result of the court's order cannot be determined from the record on appeal. The issue, therefore, must be resolved against CRG. (See *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.)

---

We will assume arguendo that CRG has standing to make this argument.

11

## 2. *The alleged amendment of the appointment order*

CRG next contends that the court lacked jurisdiction to reconsider and amend its February 10, 2020 order appointing CRG as receiver. CRG does not identify any part of the appointment order that the court amended, and nothing in our record indicates the court made such an amendment. According to CRG, however, the effect of the October 12 order "was to reduce the receivership lender's initial loan that was authorized by the appointment order from $25,000 to $21,716.07." (Capitalization omitted.) We disagree. In ruling on the motion for discharge, the court explained that it was allowing CRG to recover $21,716.07 as reimbursement for fees and expenses incurred prior to the date the stay of the appointment order went into effect, but not thereafter. The court did not state or imply that it was reducing the receivership lender's initial loan or amending the appointment order in any way.

CRG's argument appears to imply that the court's authorization in the appointment order for CRG to borrow $25,000 via a receiver's certificate meant that CRG would eventually be reimbursed for any expenses it paid with the borrowed funds. Nothing in the appointment order or the record supports that interpretation. The court's approval of reimbursement of $21,716.07 was based on the rationale that CRG should not be reimbursed for expenses incurred after the stay went into effect. The fact that CRG may have paid such unreimbursed expenses with money it borrowed pursuant to the receiver's certificate does not, so far as our record reveals, alter the court's appointment order in any way.

12

### 3. *The lender as an alleged indispensable party*

Lastly, CRG contends that the receivership lender is an indispensable party in this case, and the court erred by impairing its interest without providing it with an opportunity to be heard. We disagree.

As Sandblossom points out, CRG, not the court, had the duty to provide notice of its motion for discharge "to every person or entity known to the receiver to have a substantial, unsatisfied claim that will be affected by the order . . . , whether or not the person or entity is a party to the action or has appeared in it." (Cal. Rules of Court, rule 3.1184(c); see *Vitug v. Griffin* (1989) 214 Cal.App.3d 488, 496 [the receiver has a duty "to see to it that each [creditor] has an opportunity to enforce his claim"].) In support of the motion, the president of CRG represented that he would "provide notice [of the motion for discharge] to all potentially interested parties." The proof of service of the motion, however, shows service on Sandblossom and the City only, not the lender. To the extent that the absence of notice to the lender could be a point of error, CRG "is estopped from asserting it as a ground for reversal." (*Horsemen's Benevolent & Protective Assn. v. Valley Racing Assn.* (1992) 4 Cal.App.4th 1538, 1555; see also *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 212 ["when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error"].)[5]

---

[5] Sandblossom filed a motion for sanctions on the ground that the appeal is untimely and frivolous on the merits. We deny that motion.

## DISPOSITION

The October 12, 2023 order from which the appeal is taken is affirmed.  Respondent Sandblossom is awarded its costs on appeal.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:



WEINGART, J.



KELLEY, J.*

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.