Filed 9/17/20  Marriage of Sorrentini and Julia-Levy CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re Marriage of TRACIE SORRENTINI and RAUL JULIA-LEVY. <br> _____ <br><br> TRACIE SORRENTINI, <br><br>     Appellant, <br><br>     v. <br><br> RAUL JULIA-LEVY, <br><br>     Respondent. | B292708 <br><br> (Los Angeles County <br> Super. Ct. No. 17VEFL00014) |

APPEAL from an order of the Superior Court of Los Angeles County, Shirley K. Watkins, Judge.  Affirmed.

Widger & Widger, Thomas A. Widger and Michael Schultz for Appellant.

Law Offices of Stuart J. Faber and Stuart J. Faber for Respondent.

_____

# INTRODUCTION

After nearly six years of marriage, appellant Tracie Sorrentini petitioned for dissolution of her marriage to respondent Raul Julia-Levy.[1]  At the time, Raul was detained by Immigration & Customs Enforcement at a facility in Irvine pending possible deportation; Tracie's attorney thus personally served Raul with the moving divorce papers at the detention facility.

In her filings, Tracie represented to the court under penalty of perjury that there are no community property assets to be divided by the court, and that the parties' Woodland Hills residence, Paw Hills business, and Toyota Sienna vehicle are all Tracie's sole and separate property.

After Raul was deported to Mexico, Tracie filed a request for entry of default.  She caused notice of the request to be served on Raul at his "last known address," which was her own home address in Woodland Hills, where Raul resided prior to his detention and deportation.  Tracie then caused a default judgment of dissolution to be entered against Raul.

Some months after the default judgment of dissolution was filed, Raul filed a motion requesting to set aside the default and default judgment.  Raul said he was never served with notice of the default and default judgment, because Tracie served the papers at her own home, despite knowing that Raul had been deported to Mexico.  He also claimed she made false representations to the court about the character of the Woodland

---

[1]    "As is customary in family law cases, we refer to the parties by their first names."  (*Kuehn v. Kuehn* (2000) 85 Cal.App.4th 824, 828, fn. 2.)

Hills home, the business, and the car; he claimed these assets were acquired during marriage and the community has an interest in them.

The trial court granted Raul's request to set aside the default and default judgment, precipitating Tracie's appeal before us.

For reasons explained below, we conclude the trial court did not abuse its discretion in granting Raul's set-aside motion.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Filing of the Dissolution of Marriage*

Tracie and Raul were married on October 6, 2011.

They separated nearly six years later, on May 19, 2017, when Raul was detained by federal agents pursuant to an order for deportation to Mexico.  He was held at a detention facility in Irvine, California.

On May 30, 2017, Tracie filed a petition for dissolution of her marriage to Raul.  In her petition, she stated under penalty of perjury that there are no community property assets or debts to be divided by the court.  She requested that the court terminate its ability to award spousal support to either party.  And finally, she requested that the court confirm as her separate property:

1)    Real property located at 5770 Medina Road in Woodland Hills, California (Woodland Hills property);

2)    Paws Hills, a business located at 30601 Canwood Street in Agoura Hills, California; and

3)    A 2016 Toyota Sienna vehicle.

3

Later that same day, Tracie's attorney Paul Spear (Spear) personally served Raul with Tracie's moving papers at the Irvine detention facility.

In the proof of service of summons, Spear stated under penalty of perjury that he also served Raul with Tracie's 1) declaration of disclosure; 2) schedule of assets and debts; and 3) income and expense declaration. The record on appeal does not include these listed pleadings.

Additionally, Tracie filed a declaration signed under penalty of perjury that Spear had served Raul with Tracie's preliminary declaration of disclosure, income and expense declaration, and "*Schedule of Assets and Debts . . .* or *Community and Separate Property Declarations . . .* with appropriate attachments, all tax returns filed by the party in the two years . . . and all other required information under Family Code section 2104." Again, the record on appeal contains *none but one* of the listed disclosure pleadings—Tracie's separate property (SP) declaration dated July 5, 2017, and filed July 10, 2017.[2]

---

[2] It must be noted that while Spear alleged he served Tracie's separate property declaration on May 30, 2017, the one provided in the record was dated and signed on July 5, 2017, more than a month after the date it was allegedly served. Also troubling is that it was signed under penalty of perjury by Spear and not the actual should-be declarant Tracie. And finally, Tracie failed to include *any* requisite supporting documentation (grant deed, title documents, business ownership statements, etc.) with her separate property declaration despite the express instructions provided on page 4 of the form.

In the SP declaration, Tracie listed the following as her separate property:

1) The Woodland Hills property, acquired in 2010;

2) Household furniture, acquired in 2010; and

3) The Paw Hills Dog Kennel, acquired in 2014.

Meanwhile, Raul remained an "inmate/undocumented immigrant" at the Irvine detention facility until June 20, 2017, when he was deported to Mexico.[3]

B.   *Entry of Default Against Raul*

On July 10, 2017, Tracie filed a request to enter default. In her request, she represented to the court that there are "no issues of division of community property" and "no issues of . . . spousal . . . support . . . subject to determination by the court."

Regarding service of Tracie's request to enter default, the Judicial Council form (FL-165) itself specifies the following two options:  1) "No mailing is required because service was by publication or posting and the address of respondent remains unknown."  2) "A copy of this *Request to Enter Default* . . . and an envelope with sufficient postage, was provided to the court clerk, with the envelope addressed as follows (*address of the respondent's attorney or, if none, the respondent's last known address*)."  Tracie opted for the latter, and provided the court clerk a copy of her request for default, with an envelope addressed to the Woodland Hills property as the "last known address" of Raul.

---

[3]   Tracie stated she had personal knowledge of Raul's June 20 deportation as she had attended his immigration hearing the day before, where the court ordered his deportation.

Default was entered by the court on the same day Tracie filed her request.

C.    *Default Judgment of Dissolution against Raul*

Tracie submitted to the court a proposed default judgment for dissolution. In the judgment, she represented to the court (again) that "[t]here are no community property assets" and "no community debts." She also listed the Woodland Hills property, the Paw Hills business, a 2016 Toyota Sienna, and miscellaneous furniture as her separate property assets.

On September 19, 2017, the default judgment of dissolution was filed and notice of its entry was mailed to Raul at the Woodland Hills property. The parties' marital status was deemed terminated as of December 1, 2017.

D.    *Raul's Request to Set Aside the Default and Default Judgment*

Three months later, in March 2018, Raul filed a substitution of attorney with the court, stating he obtained legal representation.

On April 19, 2018, Raul filed a request for order (RFO) to set aside the default and portions of the default judgment. He stated: "As [an] inmate/undocumented immigrant, I did not have the ability to respond to the divorce papers or hire legal counsel." Tracie "never informed the court that her husband was in . . . jail. As a result, the court did not know about my inability to proceed due to my incarceration."

He also argued that Tracie's representation to the court that there were no issues of spousal support or division of community property was false. He contended he is entitled to one-half of the Woodland Hills property, the Paw Hills business,

6

and the 2016 Toyota Sienna vehicle, all of which, he argued, were acquired during marriage and are "presumed to be community property [per] Family Code §760." Raul contends he "would materially benefit from setting aside portions of the judgment regarding division of property because the court is required to divide the community assets and debts equally [per] Family Code § 2550."

In support, Raul provided a Chicago Title Property Profile of the Woodland Hills property, which listed the date of the most recent transfer as December 8, 2014—during marriage—to Tracie. The mortgage on the property was in Tracie's name and the deed of trust for same was recorded on May 1, 2015. He provided copies of grant deeds as well as a real property tax assessor record to that effect.

As for the business Paw Hills, Raul provided a California Business Search print-out which stated the business's registration date as July 7, 2014—during marriage—and listed Tracie as its agent for service of process.

And lastly, also as part of his RFO, Raul requested that Tracie be ordered to transfer possession of three dogs—which he claims were all purchased and/or adopted during marriage—to a family friend, pending his ability to assume physical custody of the dogs when he returns from Mexico.

E.    *Tracie's Opposition to Raul's Request to Set Aside*

On July 3, 2018, Tracie filed her responsive declaration opposing Raul's RFO. She stated: "I have personally emailed or attached via text message every document sent [to] *my house* in

7

[Raul]'s name."[4]  She provided a screenshot of a text message exchange with Raul dated August 20, 2017, where Raul acknowledged he received part of the request for entry of default.[5] She believed Raul was "misleading the court" by making it seem as though "he did not have the ability to respond" to her petition, when he was in fact "not incarcerated and was comfortably residing with relatives in Mexico."

Tracie said she had requested Raul's current address from him, but that he refused.  In support, she provided a copy of an e-mail Raul sent her *just a few weeks prior, dated June 10, 2018*, where he said:  "You made a huge mistake by . . . set me up with immigration, you tried to have me killed in [M]exico[,] *this is* [*why*] *I never give you my address you asked me 100,000 times and I never give it to you*, now you have to face a criminal law suit for intent of murder . . . I promise you you'll make it to the front page of TMZ and many other outlets."  (Italics added.)

As for the Woodland Hills property, Tracie said she purchased it in 2009, two years before her marriage to Raul, "free and clear of any liens entirely with funds gifted . . . by her grandfather."

---

[4]     In support, Tracie provided an email print-out she had sent Raul on August 20, 2017, with four attachments titled "Scan_20170820" (the attachments themselves were not provided), to which Raul replied "That doesn't mean anything" and "I'm coming home soon."

[5]     The text message screenshot Tracie provides shows Raul acknowledging receipt of *only the second page of the request for default*, which contains information regarding the memorandum of costs and declaration of nonmilitary status alone.

8

As for Paw Hills, she explained the source of the funds used to acquire the business derived from separate property sources—she refinanced the Woodland Hills property to take out a mortgage for $500,000 and received a $500,000 separate property gift from her grandfather. According to Tracie, Raul "never worked there" and would "[o]n occasion . . . show[] up at the facility and [take] pictures and videos for his social media websites and claimed it was his company, knowing he actually had no interest at all."

Most significantly, Tracie brought to the court's attention (*for the first time in the family law proceedings*) that she and Raul had "voluntarily signed a premarital agreement addressing all of [their] potential marital property issues" on August 5, 2011—two months before they married. She provided the court with a copy of the 16-page-long premarital agreement (PMA), which she alleged establishes that the Woodland Hills property and Paw Hills are her separate property assets.

And as for the three dogs, Tracie argued Raul does not have "an ownership interest" in the dogs, as they are the property of Paw Hills. She contends "[e]ven if [he] had an ownership interest, California Abandonment Law" applies, as it "has been more than one year since [Raul] has seen any of the animals."

F.    *Raul's Reply Declaration in Support of his RFO*

On July 11, 2018, Raul filed his reply declaration. He denied signing the PMA and stated, "The signature is not mine. I would never sign a document waiving my interest in the marital property." He provided the court with a certified letter from the notary public who had allegedly notarized their PMA. The notary certified the PMA is "a forgery" and Raul and Tracie "had never appeared before [him] to request the certification of the

9

aforementioned document." Raul posed the question, "If this document existed, why did [Tracie not] mention it in her Petition for Dissolution or Default Judgment"? He stated he "should have the opportunity to prove that the premarital agreement is fraudulent."

Raul explained it is no secret he is "the son of the famous actor, Raul Julia" and he himself is "a well-known celebrity and public figure in Mexico." He asserted Tracie should have served him in Mexico, as his "whereabouts was never a secret." He also included as an exhibit a copy of an article from www.vanguardia.com that discussed (in Spanish) how Raul, an actor and animal rights activist, was invited to join the next president-elect's team in the area of protection of endangered species.

He brought to the court's attention two additional issues arising from Tracie's alleged service of documents via text and/or e-mail: 1) Tracie is not allowed to serve Raul with any pleadings herself as she is a party to the case; and 2) Raul never agreed to accept service by text or e-mail, which he contends are not reliable and can easily be altered.

Lastly, Raul repeated to the court his understanding that "[i]t is undisputed that all assets acquired during the marriage . . . is community property." He explained that during their marriage, he assisted Tracie in the "management and operations" of Paw Hills and would "regularly mention it on social media for [his] followers." He provided what purports to be text messages from Tracie, telling him he "need[s] to sign the papers saying that you don't own anything in the marriage."

10

G.    *Hearing and Ruling*

The hearing on Raul's RFO took place on July 18, 2018. The court stated it "read and considered the papers" and that its "tentative ruling is to [set] aside the default and default judgment and to order that the three dogs . . . be held and not sold . . . pending determination of who owns those animals." The court said the "basis for [its] decision is numerous" and engaged in a lengthy back-and-forth discussion with the parties and counsel. We provide the relevant portions below.

Ineffective Notice

The court found Tracie did not provide proper notice to Raul with respect to the entry of default and default judgment against him. The court explained its reasoning: "[M]y decision is based upon the fact that despite knowing . . . Levy was no longer living in the home, because he had been . . . deported," Tracie sent the notice of entry of default to him "at the home address *knowing that he wasn't there*." (Italics added.) The court similarly found Tracie sent the notice of entry of judgment to the Woodland Hills address "*knowing that he wasn't living there anymore* and he had been deported to Mexico" (italics added); the court believed that "defeats the purpose of giving people an opportunity to participate in the case on the merits."

The court further explained that the "goal of giving a notice of entry of default . . . is to give people notice and put them on alert saying, hey, you know, this is happening, if you don't want judgment to be entered, you need to participate in the case. . . . [G]iving notice of entry of judgment starts the clock running for them to come in and ask for a judgment to be set aside." The court told Tracie that she sent the notice to her own home and thus, she "had control over the notice." The court told

11

Tracie and her counsel Spear "[t]here are options available under the law for giving notice to people if you actually do not know their address. And there is statutory remedies that are available for that." But given how things transpired, the court "cannot countenance [the] default" when Tracie "intentionally gave notice to addresses that she knew he was not at."

The court found "entry of default and the entry of judgment cannot be effective under those circumstances."

<u>Failure to Disclose PMA and Community Property Assets</u>

Next, the court expressed concern that Tracie brought to its attention a purported PMA "for the first time" in her opposition to Raul's RFO, and had "not disclosed to the court as part of the original proceedings." The court said it "question[ed] the motivations of [Tracie] in not disclosing that information to the court." It also stated Tracie should have disclosed the PMA during the default proceedings "as a way of defending the issue of who has ownership of the puppies."

Tracie told the court she didn't raise the PMA earlier because it was "not necessary" and because "it is clear that all these properties are her separate properties." The court, however, disagreed with Tracie, and stated "[t]hat doesn't necessarily mean that the community doesn't have an interest in some of these properties, which were not disclosed to the court in her property declarations." The court also found issue with the fact that Tracie had not completed a community property (CP) declaration "indicating that there was no community property."

The court noted there are "issues concerning community property, which were not brought to the court at the time the default judgment was entered and so the court didn't have an opportunity to make any rulings concerning that before judgment

12

was entered." The court expressed how California law and policy favor trial on the merits and "certainly does not favor defaults taken in secret or judgments entered in secret, which is kind of how I see it because notice wasn't given to him."

As for Paw Hills, the court believed the business "may or may not be community property" and that it "needs to hear evidence on that", as the business "was run during the community." The court similarly ordered Tracie not to sell or transfer ownership of the three dogs "pending determination of who actually has ownership interest of those dogs" and "whether or not these dogs are part of [the] business."

Thus, the default and default judgment were both set aside, and Raul was given 30 days to file a response.

This appeal followed.

## DISCUSSION

Tracie contends the trial court erred when it granted Raul's RFO to set aside the default and default judgment.

As Raul filed his RFO to set aside on April 19, 2018, more than six months after the entry of default judgment, Tracie argues Code of Civil Procedure section 473, subdivision (b) does not authorize set-aside relief. We do not dispute that.

Tracie argues the default and default judgment in this matter "could only have been vacated on one of the grounds and within the time limits specified in Family Code section 2122"[6] and that the trial court did not make "any findings of fact" nor "disclose any consideration of the weighing of any evidence" in its ruling. We disagree and affirm the set-aside order.

---

[6] All further statutory designations are to the Family Code unless otherwise stated.

13

A.    *Applicable Law*

"California has a strong policy of ensuring the division of community . . . property in the dissolution of a marriage" and "providing for fair and sufficient . . . spousal support awards." (§ 2120, subd. (a).)  But "[t]hese policy goals can only be implemented with full disclosure of community . . . and separate assets, liabilities, income, and expenses . . . ." (*Ibid*.)  In situations where the division of property "is inequitable when made due to the nondisclosure or other misconduct of one of the parties" (*id*., subd. (b)), the court must balance the "public policy of assuring finality of judgments . . . against the public interest in ensuring proper division of marital property . . . and in deterring misconduct." (*Id*., subd. (c)).

After the six-month time limit to set aside under Code of Civil Procedure section 473, subdivision (b) has run, the court is authorized to "relieve a spouse from a judgment . . . adjudicating support or division of property" (§ 2121, subd. (a)), pursuant to chapter 10 of the Family Code (§§ 2120–2129).  Section 2122 governs the "grounds and time limits" for a motion to set aside a judgment of dissolution or any part thereof.  It sets forth six grounds to set aside:  actual fraud, perjury, duress, mental incapacity, mistake, and the failure to fully and accurately disclose assets.  (§ 2122.)

For our purposes, the following are grounds to set aside: 1) actual fraud "where the defrauded party was kept in ignorance or in some other manner was fraudulently prevented from fully participating in the proceeding"; 2) perjury "in the preliminary or final declaration of disclosure . . . or in the current income and expense statement"; and 3) failure to comply with "disclosure

14

requirements" commencing with section 2100.[7]  (§ 2122, subds. (a), (b) & (f).)

With respect to these disclosure requirements, each party is required to serve a preliminary disclosure "executed under penalty of perjury."  (§ 2104, subd. (a).)  The Family Code mandates that the parties' preliminary disclosures include 1) the identity of all assets and liabilities for which the declarant may have an interest, and 2) the declarant's percentage of ownership in each asset and percentage of obligation for each liability.  (*Id.*, subd. (c).)  The commission of perjury on the preliminary disclosure may thus be "grounds for setting aside the judgment, or any part or parts thereof" pursuant to section 2120 et seq. "in addition to any and all other remedies, civil or criminal, that otherwise are available under law for the commission of perjury. The preliminary declaration of disclosure shall include all tax returns filed by the declarant within the two years prior to the date that the party served the declaration."  (*Id.*, subd. (a).)

The motion to set aside must be filed within one year after the date on which the complaining party discovered or should have discovered the fraud, perjury, or failure to comply with disclosure requirements.  (§ 2122, subds. (a), (b) & (f).)

Before granting set aside relief, the court "shall find that the facts alleged as the grounds for relief materially affected the

---

[7]     As codified in section 2100 et seq., California law recognizes "the vital importance of 'full and accurate disclosure of all assets and liabilities' at the 'early stages' of a marital dissolution proceeding to ensure fair and sufficient . . . spousal support awards and to achieve a proper division of community and quasi-community assets and liabilities."  (*Lappe v. Superior Court* (2014) 232 Cal.App.4th 774, 780.)

15

original outcome and that the moving party would materially benefit from the granting of the relief." (§ 2121, subd. (b).) When ruling on a motion to set aside, the court "shall set aside only those provisions materially affected by the circumstances leading to the court's decision to grant relief", and the court "has discretion to set aside the entire judgment, if necessary, for equitable considerations."[8] (§ 2125.)

B.    *Standard of Review*

We review the trial court's order granting Raul's request to set aside for abuse of discretion. (*In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 682–683; *In re Marriage of Varner* (1997) 55 Cal.App.4th 128, 138.) " 'A trial court's exercise of discretion will not be disturbed on appeal unless, *as a matter of law,* an abuse of discretion is shown—i.e.,—where, considering all the relevant circumstances, the court has "exceeded the bounds of reason" or it can "fairly be said" that no judge would reasonably make the same order under the same circumstances.' " (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 480.) " 'So long as the court exercised its discretion along legal lines, its decision will not be reversed on appeal if there is substantial evidence to support it.' " (*Ibid.*)

C.    *The Trial Court Did Not Err in Granting Raul's RFO to Set Aside the Default and Default Judgment.*

Tracie urges us to reverse the court's order setting aside the default and default judgment. She believes Raul failed to establish statutory grounds for set-aside relief, and that the court

---

[8]    Nothing in chapter 10 of the Family Code is "intended to restrict a family law court from acting as a court of equity." (§ 2128, subd. (c).)

failed to make "any findings of fact," or to "disclose any consideration of the weighing of any evidence." More specifically, Tracie argues the court did not make the findings required under section 2121, subdivision (b). We could not disagree more.

Here, the trial court exercised its discretion to set aside the default judgment and default due to the manifest injustice which would result if the default and default judgment were allowed to stand. We agree with the trial court that there were issues of concern as to the way Tracie served notice of the default, as well as the inaccurate and misleading representations made in her preliminary disclosures.

We address them as follows.

1) <u>Ineffective and/or Insufficient Notice of Entry of Default</u>

In her responsive declaration opposing Raul's request, Tracie stated she attended Raul's immigration hearing and had personal knowledge he was to be deported the next day—on June 20, 2017. Thus, we find two issues with Tracie listing in her July 10, 2017 request for entry of default the address of the Woodland Hills property as the "last known address" for Raul.

First, Tracie's last known address of Raul was clearly the Irvine detention center, causing her counsel to travel there and personally serve him with her moving divorce papers; so, if anything, she should have provided *that* address in an attempt to be truthful to the court. But that is not what Tracie did.

Second, Judicial Council form FL-165 provides the party requesting default with another option of serving notice of her request for default on Raul: "No mailing is required because service was by publication or posting and the address of respondent remains unknown." It is true Tracie did not initiate the divorce case by publication or posting, as she knew his

17

location at the Irvine facility at that point in time. But after reading that option, and it quite clearly states "the address of respondent remains unknown," Tracie or, at the very least, her counsel Spear, should have done due diligence in attempting to properly serve and give notice of Tracie's request for entry of default by publication or posting. At the very minimum, Tracie and her counsel should have brought this to the attention of the court. What they should not have done is declare under penalty of perjury that they properly served him with notice at the "last known address" and proceed to file a default judgment against him.

Tracie alleged she did not know Raul's address in Mexico, and tried to electronically serve documents on him instead. But we see no evidence in the record that supports the notion that Tracie and her counsel diligently tried to locate his address or actually attempt proper service of the entry of default. One party's failure to provide a current address does not remove the other party's responsibility and duty to effectuate valid service of pleadings, nor does it absolve Tracie's decision to provide her own home address as Raul's last known address.

Most interesting and worth noting is the following. The PMA Tracie herself submitted to the court states that Raul was "residing in León Guanajuato, Mexico" when, in August 2011, he allegedly signed it. Additionally, the public notary's certified letter of July 3, 2018 (stating he has never met Tracie nor Raul in connection with the PMA) provides Raul's current address as 113 Jardín Escocés Street "in the city of León, Guanajuato, Mexico." Thus, it appears Raul returned to the city he resided in prior to his marriage to Tracie. Why didn't Tracie attempt to serve Raul by publication or posting (per Code of Civil Procedure section

18

415.50) in León, Guanajuato, Mexico, the place she knew he was residing when he allegedly signed the PMA she presented to the court?

Another valid option for Tracie and her counsel was to do some light searching/investigating about Raul's location in León, Guanajuato, Mexico to ascertain his address and have him served there. Raul argues he is a celebrity figure in Mexico and that his location was never "a secret." Tracie herself noted in her responsive pleadings to the RFO that Raul "was comfortably residing with relatives in Mexico." The record includes sufficient evidence of Raul's celebrity status, including statements in his declaration that he is "a well-known celebrity and public figure in Mexico" and a copy of an article discussing his invitation to join the next president-elect's team in the area of protection of endangered species. Thus, it should not have been difficult to attempt to locate him in León, Guanajuato, Mexico for purposes of effectuating proper service of her request for entry of default.

We find Tracie's misrepresentation that she served Raul at his "last known address" qualifies as actual fraud within the meaning of section 2122, subdivision (a) (i.e., the defrauded party was "kept in ignorance" or in some manner was "fraudulently prevented from fully participating in the proceeding"). Civil Code section 1572, subdivisions 1 and 3, define "actual fraud" to include "[t]he suggestion, as a fact, of that which is not true, by one who does not believe it to be true" and "[t]he suppression of that which is true, by one having knowledge or belief of the fact."

The underlying court found as much as well, when it stated: "[D]espite knowing . . . Levy was no longer living in the home, because he had been . . . deported," Tracie sent the notice of entry of default and default judgment to him "at the home

19

address *knowing that he wasn't there*" and "had been deported to Mexico."  (Italics added.)  The court rightfully believed that "defeats the purpose of giving people [i.e., Raul] *an opportunity to participate in the case on the merits*," especially as Tracie "had control over the notice" she sent to her own home.  The court provided, in detail, its reasoning about the importance of giving notice of entry of default, and that it "cannot countenance [the] default" given the manner in which things transpired.[9]

Thus, the record shows the court made the findings required per section 2121, subdivision (b).  The court found the alleged facts surrounding Tracie's fraudulent representation of serving Raul with the default notice at his "last known address" affected the original outcome; it did not put him on alert that "if you don't want judgment to be entered, you need to participate in the case."  As Raul is now allowed to file a response and to participate in the proceedings, he is now afforded the "opportunity to participate in the case on the merits."

2) Failure to Disclose PMA and Community Property Assets

The PMA provides:  "[I]t is the express intention of Tracie and Raul that the following provisions shall prevail in the event

---

[9]     The court's finding that Tracie's mailing of the request for entry of default to her own home address was improper additionally means the default may be void for lack of proper service, and the default judgment may be void on the face of the record when it appears the trial court had no power to enter the default and default judgment thereafter.  (*Heidary v. Yadollahi* (2002) 99 Cal.App.4th 857, 862; *Yeung v. Soos* (2004) 119 Cal.App.4th 576, 582; *Olvera v. Olvera* (1991) 232 Cal.App.3d 32, 41.)

of a dissolution." However, in the original proceedings, Tracie did not inform the court of the existence of a PMA signed by the parties—which, if found valid, would have controlled the characterization and division of the parties' assets and debts, as well as any spousal support terms, in the proposed default judgment of dissolution she submitted to the court. Instead, it appears Tracie and Spear usurped the fact-finding and adjudicative roles of the court, and made their own decision that it was "not necessary" because "it is clear that all these properties are her separate properties." This does not amount to a "full and accurate disclosure" required by section 2100, subdivision (c).

Similarly, while assets acquired during marriage are presumed to be community property per section 760, and evidence is to be introduced by the parties at a "prove-up" hearing to establish, by tracing or other means, the separate property character of an asset, Tracie and her counsel once more usurped the judicial role of the court and made their own determinations as to the characterization of the Woodland Hills property and Paw Hills business. A spouse's decision not to disclose the existence of a community asset, as occurred in the present case, constitutes a basis for setting aside a judgment under section 2122, subdivision (f) as well.

Further, we note Tracie failed to include all of her preliminary disclosure pleadings as part of the record on appeal.[10] While the declaration about service of her preliminary disclosures states she served Raul with a "Preliminary

___

[10] Failure to provide an adequate record requires that the issue be resolved against the appellant. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295; see *Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362.)

21

Declaration of Disclosure (form FL-140), current Income and Expense Declaration (form FL-150), completed Schedule of Assets and Debts (from FL-142) or Community and Separate Property Declarations (form FL-160) with appropriate attachments, all tax returns filed by the party in the two years . . . and all other required information under Family Code section 2104" (some italics omitted), the record contains only one of the required preliminary disclosure documents:  a SP declaration signed under penalty of perjury by Spear and not the should-be declarant Tracie.  (See § 2104, subd. (a).)

Tracie represented to the court in her declaration about serving the preliminary disclosures that she served Raul with both "Community *and* Separate Property Declarations", while it is undisputed that she only served him with the SP declaration.  That constitutes fraud.

Additionally, Spear stated under penalty of perjury that Tracie's disclosure included the "appropriate attachments, all tax returns filed by the party in the two years . . . and all other required information under Family Code section 2104," but there are no attachments to the SP declaration in the record.  In fact, page 4 of the SP declaration itself provides express instructions that "[c]opies of the following documents must be attached and served on the other party", including "deeds with legal descriptions and the latest lender's statement" for real estate, "the most current K-1 and Schedule C" for business interests, etc.  Tracie's SP disclosure does not contain a single attachment in support, despite her declaration stating the opposite.  This constitutes fraud as well.

In sum, the record provides the requisites to the relief afforded under the Family Code, as "the facts alleged as the

grounds for relief materially affected the original outcome" and "the moving party would materially benefit from the granting of the relief." (§ 2121, subd. (b).) Based on the findings made during the July 18, 2018 hearing, it appears the underlying court similarly agreed that set-aside relief was warranted.

The trial court was perplexed as to why Tracie had "not disclosed to the court as part of the original proceedings" the purported PMA and "question[ed] the motivations . . . in not disclosing that information." The trial court similarly found issue with the fact that Tracie had not completed a CP declaration, especially because there were "*issues concerning community property, which were not brought to the court at the time the default judgment was entered* and so the court didn't have an opportunity to make any rulings concerning that before judgment was entered." (Italics added.) The trial court told Tracie regardless of whether an asset is her separate property, "[t]hat *doesn't necessarily mean that the community doesn't have an interest in some of these properties*, which were not disclosed to the court in her property declarations." (Italics added.) To that effect, it found the Paw Hills business "may or may not be community property" and that it "needs to hear evidence on that," since the business "was run during the community."

The findings of the court illustrate it agreed with Raul that Tracie's and her counsel's fraudulent acts (as specified) constituted grounds for set-aside relief, as "issues concerning community property . . . were not brought to the court" in the original proceeding and "were not disclosed to the court in her property declarations." This affected Raul, as the court "didn't have an opportunity to make any rulings concerning [issues of community property] before judgment was entered."

23

We find no abuse of discretion by the trial court in granting Raul's motion.

## DISPOSITION

The trial court's July 8, 2018 order is affirmed.  Respondent Raul Julia-Levy is awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, J.

We concur:

BIGELOW, P. J.

WILEY, J.